450 So.2d 217 (1984)
Eugene HOLLY, M.D., Petitioner,
v.
Albert W. AULD, M.D., Respondent.
Hubert L. ROSOMOFF, M.D., and Albert Ehlert, M.D., Petitioners,
v.
Albert W. AULD, M.D., Respondent.
Nos. 62785, 62778.
Supreme Court of Florida.
May 3, 1984.
Marjorie Gadarian Graham of Jones & Foster, West Palm Beach, for Eugene Holly, M.D.
Michael B. Davis of Walton, Lantaff, Schroeder & Carson, West Palm Beach, for Hubert L. Rosomoff, M.D.
Kent S. Pratt of Cibula, Gaunt & Pratt, West Palm Beach, for Albert Ehlert, M.D.
Stephen Cahen, Miami, and Edna L. Caruso, West Palm Beach, for respondent.
Emil C. Marquardt, Jr. of McMullen, Everett, Logan, Marquardt & Cline, Clearwater, for Florida Hospital Association and Florida Medical Association, amicus curiae.
Claude H. Tison, Jr. and William B. Taylor, IV of MacFarlane, Ferguson, Allison & Kelly, Tampa, for Florida Dental Association, amicus curiae.
*218 McDONALD, Judge.
These two cases, seeking review of the same district court opinion and now consolidated, have been certified to us by the Fourth District Court of Appeal as involving the following question of great public importance:
Is the discovery privilege set out in section 768.40(4), Florida Statutes, limited to civil actions against providers of health care services based on medical malpractice?
Auld v. Holly, 418 So.2d 1020, 1027 (Fla. 4th DCA 1982). We have jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution.[1] We answer the certified question in the negative, finding that the discovery privilege of section 768.40(4) is not so limited, and we therefore quash that portion of the district court's opinion holding to the contrary.
The plaintiff below, Dr. Auld, applied for staff privileges at Good Samaritan Hospital in West Palm Beach. He signed a release relieving from liability hospital representatives and persons furnishing information concerning his application to the hospital. Pursuant to hospital rules, Dr. Holly, chief of neuro-surgery at Good Samaritan and one of the petitioners here, interviewed Auld. Following the interview Holly contacted a number of physicians, including Dr. Rosomoff and two other petitioners, to verify information given by Auld. Holly then submitted a report to the hospital's credentials committee. Incorporating information given by the other petitioners, Holly's report noted, inter alia, that Auld had "apparently" done unnecessary surgical procedures and had provided inadequate postoperative care to patients. The credentials committee denied Auld's application.
Auld then filed suit against the four petitioners, alleging that their statements had resulted in his denial of staff privileges and loss of reputation, referrals, patients, and fees. Auld sought discovery of the credential committee's records and sought to examine witnesses concerning the denial of staff privileges. He alleged such discovery was necessary to refute the petitioners' claim that the denial was based upon reasons other than the allegedly defamatory statements made about Auld by the petitioners. The trial court held that section 768.40(4), Florida Statutes (1977), barred such discovery. The jury in the defamation action returned a special verdict finding that the allegedly defamatory remarks had been made but that they did not "tend to expose the plaintiff to hatred, ridicule, or contempt or tend to injure the plaintiff in his profession." The jury made no findings as to whether the statements were true or privileged. The court entered judgment in accordance with the verdict.
On appeal the fourth district reversed and remanded. It found the discovery privilege set forth in section 768.40(4) limited to civil actions against providers of health services based on medical malpractice and then certified its decision to this Court. The district court began its analysis of the question subsequently certified to this court "by noting that almost all of the provisions of Section 768.40, Florida Statutes (1981), are ambiguous." 418 So.2d at 1023. In particular, the district court found subsection (4), providing medical review committees with a limited privilege against discovery in civil actions, to be "fairly susceptible to different constructions." Id. at 1025. From this analytical starting point, the district court embarked on a search for the real legislative intent behind section 768.40, eventually concluding that the privilege contained therein is *219 applicable only to medical malpractice actions. We disagree with that conclusion.
Florida case law contains a plethora of rules and extrinsic aids to guide courts in their efforts to discern legislative intent from ambiguously worded statutes. However,
[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.
A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 1144, 137 So. 157, 159 (1931). See also Carson v. Miller, 370 So.2d 10 (Fla. 1979); Ross v. Gore, 48 So.2d 412 (Fla. 1950). It has also been accurately stated that courts of this state are
without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power.
American Bankers Life Assurance Company of Florida v. Williams, 212 So.2d 777, 778 (Fla. 1st DCA 1968) (emphasis added). It is also true that a literal interpretation of the language of a statute need not be given when to do so would lead to an unreasonable or ridiculous conclusion. Johnson v. Presbyterian Homes of Synod of Florida, Inc., 239 So.2d 256 (Fla. 1970). Such a departure from the letter of the statute, however, "is sanctioned by the courts only when there are cogent reasons for believing that the letter [of the law] does not accurately disclose the [legislative] intent." State ex rel. Hanbury v. Tunnicliffe, 98 Fla. 731, 735, 124 So. 279, 281 (1929).
The district court conceded that it was "arguable" that Dr. Auld sued Dr. Holly for a matter that was the subject of review and evaluation by the credentials committee, thus making the discovery privilege of section 768.40(4) applicable. 418 So.2d at 1025. The court went on, however, to reason that the policy in favor of broad discovery compelled a narrow construction of any statute which limited a litigant's right to discovery. Id. There are, however, substantial legislative policy reasons to restrict discovery of hospitals' committee proceedings and it is not the court's duty or prerogative to modify or shade clearly expressed legislative intent in order to uphold a policy favored by the court. See McDonald v. Roland, 65 So.2d 12 (Fla. 1953).
Subsection (4) of what is now section 768.40 was enacted as chapter 73-50, Laws of Florida. The preamble and language of that enactment readily reveal the legislature's intent and its policy reasons.[2] In an *220 effort to control the escalating cost of health care in the state, the legislature deemed it wise to encourage a degree of self-regulation by the medical profession through peer review and evaluation.[3] The legislature also recognized that meaningful peer review would not be possible without a limited guarantee of confidentiality for the information and opinions elicited from physicians regarding the competence of their colleagues.
It is apparent that the need for confidentiality is as great when a credentials committee attempts to elicit doctors' honest opinions about one of their colleagues for purposes of determining fitness for staff privileges as when attempting to determine whether the practice of a doctor on the staff meets the standards of the medical community. A doctor questioned by a review committee would reasonably be just as reluctant to make statements, however truthful or justifiable, which might form the basis of a defamation action against him as he would be to proffer opinions which could be used against a colleague in a malpractice suit. The discovery privilege of subsection (4) was clearly designed to provide that degree of confidentiality necessary for the full, frank medical peer evaluation which the legislature sought to encourage. Neither the language of the statute, nor the legislative intent discernable therefrom, admits of an interpretation which would limit the discovery privilege to medical malpractice actions and would preclude its application to defamation actions.
Inevitably, such a discovery privilege will impinge upon the rights of some civil litigants to discovery of information which might be helpful, or even essential, to their causes. We must assume that the legislature balanced this potential detriment against the potential for health care cost containment offered by effective self-policing by the medical community and found the latter to be of greater weight. It is precisely this sort of policy judgment which is exclusively the province of the legislature rather than the courts.
*221 We conclude that the discovery privilege provided in section 768.40(4) is not limited to medical malpractice actions and, in fact, includes defamation actions arising out of the matters which are the subject of evaluation and review by hospital credentials committees. The ruling of the trial court in this case, precluding Dr. Auld from obtaining discovery of the records of Good Samaritan Hospital's Credentials Committee and refusing to allow Dr. Auld to examine witnesses concerning the committee's denial of his application for staff privileges, was, therefore, correct. That portion of the opinion of the Fourth District Court of Appeal holding to the contrary is quashed.
It is so ordered.
ALDERMAN, C.J., BOYD and OVERTON, JJ., concur.
EHRLICH, J., dissents with an opinion, in which ADKINS, J., concurs.
SHAW, J., dissents with an opinion, in which ADKINS, J., concurs.
EHRLICH, Judge, dissenting.
Prior to oral argument on this case, the Court received notice that the parties had reached a settlement and that the plaintiff below, Dr. Auld, intended to dismiss the suit. Therefore, his attorney filed a suggestion of mootness and neither filed a brief in opposition nor appeared at oral argument. The issue before the Court appears in a non-adversarial posture and we, in effect, are rendering an advisory opinion. While appellants' position was fully briefed and persuasively argued, the settlement has had the effect of "spiking the guns" of the opposition. The question is certified as being one of great public importance, but we have heard from only one segment of the public.
This Court does not render advisory opinions except to the Governor in the limited situation provided in article IV, section 1(c) of the Florida Constitution. I would therefore have relinquished jurisdiction on the suggestion of mootness.
ADKINS, J., concurs.
SHAW, Judge, dissenting.
On the question of mootness, the respondent has withdrawn the voluntary dismissal of his action against petitioner Holly, thus negating his earlier suggestion of mootness.
The majority opines that the legislature intended, by subsection 768.40(4), Florida Statutes (1977), to absolutely bar discovery of the proceedings and records of medical review committees in any civil action. In my view, the majority opinion is unconvincing for two reasons. First, the opinion does not address the fact that subsection 768.40(2) grants only a qualified privilege against suit and is not applicable if the committee member acts with malice or fraud. Thus, the privilege does not prohibit an action in defamation.[1] This qualification placed on the privilege against suit is merely a codification of the rule that
[w]hen a matter which otherwise would be a qualifiedly privileged communication is published falsely, fraudulently and with express malice and intent to injure ..., the communication loses its qualifiedly privileged character and the parties lay themselves liable to a suit for damages in an action of libel or slander. However, the malice ... must be actual and not merely inferred from falsity, etc.
Loeb v. Geronemus, 66 So.2d 241, 244 (Fla. 1953) (citations omitted). Thus, we have a clearly expressed legislative intent in subsection 768.40(2) that malice or fraud is redressable by civil action. The majority interpretation of subsection 768.40(4) creates the illogical result of a plaintiff being permitted to bring a cause of action but being absolutely prohibited from conducting any discovery of the evidence essential to his cause of action. This interpretation is contrary to rules of statutory interpretation that "[i]t should never be presumed *222 that the legislature intended to enact purposeless and therefore useless, legislation" and "[n]o literal interpretation should be given which leads to an unreasonable or ridiculous conclusion," Sharer v. Hotel Corp. of America, 144 So.2d 813, 817 (Fla. 1962), and Johnson v. Presbyterian Homes of the Synod, 239 So.2d 256, 263 (Fla. 1970), respectively. The majority interpretation also violates the cardinal rules of statutory interpretation which say that statutes should be read in pari materia and all provisions should be given effect where possible. In re Opinion to the Governor, 60 So.2d 321, 324 (Fla. 1952); Ideal Farms Drainage District v. Certain Lands, 154 Fla. 554, 19 So.2d 234, 239 (1944). Under the majority's literal interpretation of subsection 768.40(4), we are faced not merely with an ambiguity but with a direct contradiction between subsections (2) and (4) of section 768.40. Is it likely that the legislature intended to give committee members an unchecked license to commit acts of fraud and malice? I believe not. This would be contrary to the well-established rule that malice or fraud strips an otherwise privileged communication of its immunity and would raise serious constitutional questions which I address below.
In subsection 768.40(2), the legislature clearly revealed its awareness that tortuous conduct might occur during committee proceedings and its intent that malicious or fraudulent torts be redressable through civil actions. Reading the two sections together, I conclude that a reasonable interpretation is that the discovery privilege in subsection (4) is not an absolute privilege, but should be read to parallel the qualified privilege contained in subsection (2). As so interpreted, the legislative intent of not shielding fraud or malice would be effectuated while still giving the committee proceedings and records a qualified discovery privilege. If overbroad discovery is sought, the usual remedy of a motion for a protective order is available and could provide the committee members and witnesses the protection the majority seeks to provide by a statutory interpretation, which makes prosecution of a legitimate cause of action impossible.
The second reason for my finding the majority interpretation unconvincing is that the interpretation, as applied, bars access to the courts for redress of injury in violation of article I, section 21, Florida Constitution.[2] The majority does not address the issue of whether the statute, as interpreted and applied, is constitutional. I fully recognize that a statute is presumptively valid and, ordinarily, a court will not raise or voluntarily pass upon the constitutionality of a statute where a party has not raised the issue. Mott v. Cochran, 117 So.2d 408 (Fla. 1960). Indisputably, the issue of constitutionality has not been raised because, as Justice Ehrlich's dissent points out, respondent has chosen not to file a brief in support of the district court decision, and we have not been presented with an adversarial exposition of the issues. Inasmuch as our jurisdiction is based on the district court's certification of a question of great importance and the ultimate question for this Court is the correctness of the district court decision, not its reasons therefor, I consider it appropriate and necessary to examine any alternative legal theories which support the decision below.[3]Congregation Temple De Hirsch v. Aronson, 128 So.2d 585 (Fla. 1961).
The effect of the majority opinion's interpretation of the statute is to grant members of medical review committees, and others who testify before or submit recommendations *223 to the committees, an unchecked license to defame applicants for medical staff privileges during committee proceedings by denying such applicants access to the courts for the redress of such defamation. Unlike the district court opinion, the majority opinion fails to recognize the crucial distinction between a suit on medical malpractice which occurs outside the committee proceedings and a suit on defamation which occurs within the committee proceedings. A suit on medical malpractice can be successfully prosecuted, if meritorious, by discovery of events which are not protected by the committee's privilege, as subsection 768.40(4), Florida Statutes (1977), itself recognizes:
However, information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his knowledge, but the said witness cannot be asked about his testimony before such a committee or opinions formed by him as a result of said committee hearings.
By contrast, a suit on defamation which occurs during the committee proceedings can be prosecuted only if discovery of the committee proceedings is permitted. To deny discovery under these circumstances is to deny access to the courts for redress of injury.
On the theory that a legislature pledged to obey the constitution would not knowingly enact an unconstitutional measure, it is well established that courts will treat statutes as presumptively valid. Wright v. Board of Public Instruction, 48 So.2d 912, 914 (Fla. 1950). In order to support and protect this rule of presumptive constitutional validity, well-established rules of statutory interpretation have evolved: if there is any reasonable basis for doing so, courts will construe a statute so as to uphold it rather than invalidate it (Sarasota County v. Barg, 302 So.2d 737, 741 (Fla. 1974), citing Rich v. Ryals, 212 So.2d 641 (Fla. 1968)); a statute will not be given its broadest meaning if to do so renders the statute of doubtful constitutionality (Olds v. State ex rel. Cole, 101 Fla. 218, 221, 133 So. 641, 643 (1931)); and, if a statute admits of two interpretations, a court will adopt that which leads to constitutionality (Redwing Carriers, Inc. v. Mason, 177 So.2d 465, 467 (Fla. 1965)). By applying these well-established rules to the statute at hand, I conclude that subsection 768.40(4), Florida Statutes (1977), should not be read to bar discovery, or introduction into evidence, of committee proceedings and records when the civil cause of action is based on malice or fraud occurring during the committee proceedings. I have outlined above my reasons for believing that the statute can be interpreted so as to give effect to the legislative intent. This interpretation will also protect the statute from unconstitutionality.
The district court decision reconciles the contradiction between subsections (2) and (4) of section 768.40, Florida Statutes (1977), and obviates the unconstitutional denial of access to the courts for the redress of injury. I would not go so far as the district court does in holding that subsection (4) applies only to medical malpractice suits, but I would hold that it does not bar discovery of committee proceedings and records, or their introduction into evidence, when the civil action is based on malice or fraud occurring during the committee proceedings.
I respectfully dissent.
ADKINS, J., concurs.
NOTES
[1] Auld has settled with the petitioners, and his attorney has filed a suggestion of mootness with this Court. It is well settled that mootness does not destroy an appellate court's jurisdiction, however, when the questions raised are of great public importance or are likely to recur. Pace v. King, 38 So.2d 823 (Fla. 1949); Tau Alpha Holding Corp. v. Board of Adjustments, 126 Fla. 858, 171 So. 819 (1937). This case meets these requirements. The district court properly certified its question as being one of great public importance, and this situation will occur again. Moreover, the district court's incorrect resolution of the question will only cause more problems in the future.
[2] Ch. 73-50 reads as follows:

CHAPTER 73-50
House Bill No. 1104
AN ACT relating to medical review committees; renumbering section 458.20, Florida Statutes, as section 768.131, Florida Statutes; amending subsection (1) of said section and adding subsection (4), exempting proceedings of medical review committees from discovery except under certain conditions; providing an effective date.
WHEREAS, the Legislature is deeply concerned over the rising costs of health insurance which are directly related to the costs of hospital and medical services and increasing problems in the area of medical malpractice insurance; and
WHEREAS, the various health services, professional societies and associations in the State of Florida are promulgating programs and establishing committees for the purpose of reviewing standards of care, utilization and expense in the rendering of health services in an effort to deter or eliminate some of the causes of the increased claims and costs of providing health services and to provide a statistical base for further analysis, study and recommendations; and
WHEREAS, the Legislature recognizes the advisability of immunity for peer review committees so that the medical profession can explore overutilization of medical services, improper charging for medical services, and acts of malpractice in order that it can have better control over its members and experience rate its physicians for malpractice coverage; NOW, THEREFORE,
Be It Enacted by the Legislature of the State of Florida:
Section 1. Section 458.20 is renumbered section 768.131, Florida Statutes, and subsection (1) of said section is amended and subsection (4) is added to read:
768.131 Medical review committee, immunity from liability. 
(1) As used in this section, the term "medical review committee" or "committee" shall mean a committee of a state or local professional society or of a medical staff of a licensed hospital or nursing home, provided the medical staff operates pursuant to written bylaws that have been approved by the governing board of the hospital or nursing home, which is formed to evaluate and improve the quality of health care rendered by providers of health service or to determine that health services rendered were professionally indicated or were performed in compliance with the applicable standard of care; or that the cost of health care rendered was considered reasonable by the providers of professional health services in the area.
(4) The proceedings and records of committees as described in the preceding section shall not be subject to discovery or introduction into evidence in any civil action against a provider of professional health services arising out of the matters which are the subject of evaluation and review by such committee and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions or other actions of such committee or any members thereof; provided, however, that information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his knowledge, but the said witness cannot be asked about his testimony before such a committee or opinions formed by him as a result of said committee hearings.
Section 2. This act shall take effect upon becoming law.
Approved by the Governor May 21, 1973.
Filed in Office Secretary of State May 22, 1973.
[3] We are reminded by amicus that the Florida legislature is not alone in recognizing the need for effective peer review and evaluation within the medical profession. Rules of the Joint Commission on the Accreditation of Hospitals, as well as federal law and regulations, require that hospitals have a medical staff which has an organized and active program for, inter alia, reviewing the qualifications of those seeking appointment or reappointment to the hospital staff.
[1] "Malice, either actual or implied, ... [is] the gist of every actionable libel. Without malice, ... no tort could result from the publication of a defamatory statement." Layne v. Tribune Co., 108 Fla. 177, 146 So. 234, 238 (1933).
[2] By barring access to the courts, the majority interpretation also nullifies any constitutional, statutory, or common-law right of applicants which requires access to the courts for vindication. For example, rights guaranteed under art. 1, § 2, Fla. Const. Note also that the absolute privilege against discovery, which the majority grants medical review committees, is greater even than that afforded the press by the first amendment to the United States Constitution. Herbert v. Lando, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979).
[3] The district court did not address the constitutionality of the statute. I suspect, however, that it recognized the potential access to courts issue but obviated the issue by its interpretation of the statute.