522 So.2d 798 (1988)
Mark H. FELDMAN, Petitioner,
v.
Stephen GLUCROFT, M.D., et al., Respondents.
No. 68920.
Supreme Court of Florida.
February 4, 1988.
Rehearing Denied April 28, 1988.
Mark H. Feldman, D.P.M., in pro. per.
Dan Paul, Franklin G. Burt and Victoria L. Baden of Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, Miami, for respondents.
Charles C. Powers of Charles C. Powers, P.A., West Palm Beach, amicus curiae for The Academy of Florida Trial Lawyers.
Emil C. Marquardt, Jr. of McMullen, Everett, Logan, Marquardt & Cline, P.A., Clearwater, amicus curiae for The Flroida Hosp. Ass'n and The Florida Medical Ass'n.
Henry H. Raattama, Jr. and Edwart T. O'Donnell of Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, amicus curiae for South Florida Hosp. Ass'n.
Joseph W. Little, Gainesville, amicus curiae.
OVERTON, Justice.
This is a petition to review Feldman v. Glucroft, 488 So.2d 574 (Fla. 3d DCA 1986), in which the Third District Court of Appeal held that a defamation action could not be maintained against medical review committee members and the hospital they serve due to the privilege established by section 768.40(4), Florida Statutes (1983). The district court certified the following questions to be of great public importance:
(1) Does section 768.40(4) totally abolish a defamation claim arising in proceedings before medical review committees?
(2) If so, is section 768.40(4) invalid as in conflict with Article I, section 21, Florida Constitution?
Id. at 575. We have jurisdiction, article V, section 3(b)(4), Florida Constitution. We answer the first question with a qualified "no" and find a defamation claim arising under the 1983 statute is not totally abolished since a plaintiff may proceed with such an action if he or she can establish extrinsic evidence of malice or fraud. The second question is rendered moot since we find no total abolishment of a defamation claim. We approved this legislation, and its legislatively determined need, in our recent decision in Holly v. Auld, 450 So.2d 217 *799 (Fla. 1984). For the reasons expressed, we approve in part and quash in part the district court's decision.
The relevant portion of the record contains the following facts. Dr. Feldman is a licensed podiatrist practicing in Dade County, Florida, and had surgical privileges at Parkway General Hospital. As part of his practice, Dr. Feldman performed an arthroereisis procedure on a child to repair a "flatfoot" deformity. In 1979, Dr. Feldman filed a civil action in United States District Court, unrelated to the case at bar, asserting federal antitrust and constitutional claims against eighty-five defendants. During the federal antitrust action, Dr. Feldman discovered what he considered a defamation of him by a medical review committee in its determination not to allow the above-described surgical procedure by any podiatrist at Parkway General Hospital.
On March 8, 1984, Dr. Feldman filed a three-count pro se complaint that sets forth the basis of this proceeding. Counts I and II alleged that respondents libeled, slandered, defamed, and/or placed him in a false light by stating that he had performed an experimental surgical procedure on a child. Feldman also alleged respondents violated his due process and equal protection rights under the United States and Florida constitutions by revoking his privilege to perform the procedure at Parkway General. In particular, Dr. Feldman alleged that the respondents initiated the internal review of the surgical procedure and determined the procedure was experimental without his knowledge. He asserted he was not given notice of the internal review or permitted to explain or defend the procedure, in violation of Parkway Hospital bylaws. Dr. Feldman also alleged respondents used the committee report at Parkway to deny him privileges at North Miami General Hospital.
The trial court refused to compel production of the notes and records of all orthopedic staff committee meetings at Parkway General concerning Dr. Feldman and the surgical procedure. The trial court ruled that such matters were privileged under section 768.40(4), Florida Statutes (1983), and rejected Dr. Feldman's argument that 768.40 is unconstitutional. The trial court rendered final summary judgment in favor of respondents on all counts. The district court affirmed the trial court on the ground that no such action may be maintained under 768.40(4), as interpreted by this Court in Holly v. Auld, 450 So.2d 217 (Fla. 1984). The district court stated:
[W]e think it clear from the Holly case, particularly when read in the light of Justice Shaw's dissenting opinion  which does directly treat the point  that the language of the statute creates an absolute privilege and means that any existing defamation action has been totally abolished.
Feldman v. Glucroft, 488 So.2d at 575.
Question I: Abolition of a Defamation Claim by Section 768.40(4).
We disagree with the Third District's interpretation that section 768.40(4), Florida Statutes (1983), totally abolishes a defamation action arising from information furnished to a medical review committee. We find the 1983 statute, rather than totally abolishing the cause of action, adds an additional restrictive element to this cause of action. The relevant portion of section 768.40, Florida Statutes (1983), provides:
(2) There shall be no monetary liability on the part of, and no cause of action for damages shall arise against, any member of a duly appointed medical review committee ... if the committee member or health care provider acts without malice or fraud. The immunity provided to members of a duly appointed medical review committee shall apply only to actions by providers of health services, and in no way shall this section render any medical review committee immune from any action in tort or contract brought by a patient or his successors or assigns.
... .
(4) The proceedings and records of committees as described in the preceding subsections shall not be subject to discovery or introduction into evidence in any civil action against a provider of professional health services arising out *800 of the matters which are the subject of evaluation and review by such committee... .
(Emphasis added.)[*]
Considering these provisions, it is evident that the statute allows a defamation action against a committee member or health care provider when the plaintiff can establish extrinsic evidence of malice or fraud. It is clear that subsection (4) shields the contents of medical review proceedings from discovery. That requirement does not, however, restrict obtaining evidence of malice or fraud from testimony or documents which are not part of the record of those proceedings.
We considered the intent and purpose of this legislation in Holly and concluded that the legislature had a clear public need and justifiable basis for creating this limited restriction in the area of health care. We stated:
In an effort to control the escalating cost of health care in the state, the legislature deemed it wise to encourage a degree of self-regulation by the medical profession through peer review and evaluation. The legislature also recognized that meaningful peer review would not be possible without a limited guarantee of confidentiality for the information and opinions elicited from physicians regarding the competence of their colleagues.
... A doctor questioned by a review committee would reasonably be just as reluctant to make statements, however truthful or justifiable, which might form the basis of a defamation action against him as he would be to proffer opinions which could be used against a colleague in a malpractice suit. The discovery privilege of subsection (4) was clearly designed to provide that degree of confidentiality necessary for the full, frank medical peer evaluation which the legislature sought to encourage. Neither the language of the statute, nor the legislative intent discernable therefrom, admits of an interpretation which would limit the discovery privilege to medical malpractice actions and would preclude its application to defamation actions.
Inevitably, such a discovery privilege will impinge upon the rights of some civil litigants to discovery of information which might be helpful, or even essential, to their causes. We must assume that the legislature balanced this potential detriment against the potential for health *801 care cost containment offered by effective self-policing by the medical community and found the latter to be of greater weight.
450 So.2d at 219-20 (footnote omitted).
We find the language of subsection (2) allows a defamation action when it can be established that the committee member acts maliciously or fraudulently. We agree with the Third District Court of Appeal's interpretation of Holly expressed in Parkway General Hospital, Inc. v. Allinson, 453 So.2d 123 (Fla. 3d DCA 1984). In construing Holly, the Parkway court held the subject records and statements of the committee were absolutely privileged and immune from discovery. The court cautioned that its determination does not preclude a plaintiff from presenting extrinsic evidence of malice or fraud from sources such as "documents or records otherwise available from original sources [which] are not immune from discovery," nor does the statute prevent anyone who participates in a review committee proceeding from testifying separately as to matters within his or her knowledge. Id. at 126. The shield of confidentiality protects what is presented or spoken to the committee at its meetings. If that information is available from other than committee sources, then it may be used in a defamation action, which must be based on malice or fraud under the 1983 statute and intentional fraud under the present statute. Under these circumstances, the cause of action has not been totally abolished. This type of immunity is not unusual. There is an absolute, rather than a qualified, immunity from defamation actions in all judicial and legislative hearings; moreover, this type of immunity applies in many other professional, licensing, and administrative proceedings. See, e.g., McNayr v. Kelly, 184 So.2d 428, 431 (Fla. 1966) (statements of public officials in their official capacity); Robertson v. Industrial Insurance Co., 75 So.2d 198 (Fla. 1954) (statements made in license revocation proceedings before the Insurance Commissioner); Lloyd v. Hines, 474 So.2d 376 (Fla. 1st DCA 1985) (statements of state law enforcement agent as witness in criminal trial); Bell v. Gellert, 469 So.2d 141 (Fla. 3d DCA 1985) (statements made in labor grievance complaint which were relevant to that complaint); Farish v. Wakeman, 385 So.2d 2 (Fla. 4th DCA 1980) (compelled testimony before a legislative committee); Stone v. Rosen, 348 So.2d 387 (Fla. 3d DCA 1977) (absolute privilege of citizen to make complaint against Florida Bar member); Seidel v. Hill, 264 So.2d 81 (Fla. 1st DCA 1972) (statements introduced in quasi-judicial proceedings such as worker's compensation proceedings); Greene v. Hoiriis, 103 So.2d 226 (Fla. 3d DCA 1958) (statements made in connection with unemployment compensation proceedings). The justification for the immunity in these circumstances is that the necessary information could not otherwise be obtained without this protection. We accept the legislative determination that, without this type of qualified immunity, a viable health care peer review process would be difficult, if not impossible, to maintain. We conclude that section 768.40, Florida Statutes (1983), does not totally abolish the defamation cause of action. As a result of this holding, we need not address the second question.
In the instant case, we find the trial court properly denied the discovery request, but find that the summary judgment should be vacated to allow the plaintiff an opportunity to allege extrinsic malice or fraud. Accordingly, the district court of appeal is directed to remand this cause to the trial court with directions that the plaintiff be allowed to file an amended complaint under the principles and restrictions expressed in this opinion.
It is so ordered.
McDONALD, C.J. and KOGAN, J., concur.
GRIMES, J., concurs specially with an opinion.
SHAW, J., dissents with an opinion.
EHRLICH and BARKETT, JJ., dissent.
GRIMES, Justice, specially concurring.
It may be that there will be few circumstances in which a complaining party can *802 successfully prosecute a lawsuit in the face of the limitations of the statute. However, I concur in the opinion, even if the statute has the practical effect of barring defamation actions against medical review committees.
In the first place, I am not at all certain that the "access to courts" provision of the Florida Constitution, article I, section 21, is implicated because no cause of action is being abolished. At the most, the legislature simply decided to confer an absolute privilege against liability upon certain persons under certain circumstances. The majority opinion refers to many other examples of absolute privilege which have been sustained in Florida.
Even if the statute is construed as abolishing a cause of action, it can be sustained under Kluger v. White, 281 So.2d 1 (Fla. 1973), as the result of a legislative determination of overwhelming public necessity. The limitation upon discovery and introduction into evidence of the proceedings and records of medical review committees was first enacted in chapter 73-50, Laws of Florida. The preamble to that statute reads as follows:
WHEREAS, the Legislature is deeply concerned over the rising costs of health insurance which are directly related to the costs of hospital and medical services and increasing problems in the area of medical malpractice insurance; and
WHEREAS, the various health services, professional societies and associations in the State of Florida are promulgating programs and establishing committees for the purpose of reviewing standards of care, utilization and expense in the rendering of health services in an effort to deter or eliminate some of the causes of the increased claims and costs of providing health services and to provide a statistical base for further analysis, study and recommendations; and
WHEREAS, the Legislature recognizes the advisability of immunity for peer review committees so that the medical profession can explore over-utilization of medical services, improper charging for medical services, and acts of malpractice in order that it can have better control over its members and experience rate its physicians for malpractice coverage.
Ch. 73-50, Laws of Fla. Hence, it is evident that in order to improve the quality of medical services, the legislature has perceived an overwhelming need that medical review committees function without fear of retaliation. As this Court noted in Holly v. Auld, 450 So.2d 217, 220 (Fla. 1984):
Inevitably, such a discovery privilege will impinge upon the rights of some civil litigants to discovery of information which might be helpful, or even essential, to their causes. We must assume that the legislature balanced this potential detriment against the potential for health care cost containment offered by effective self-policing by the medical community and found the latter to be of greater weight. It is precisely this sort of policy judgment which is exclusively the province of the legislature rather than the courts.
SHAW, Justice, dissenting.
I dissent for the reasons set forth in my dissent to Holly v. Auld, 450 So.2d 217 (Fla. 1984). Despite the protests to the contrary, it is obvious that the majority decisions here and in Holly create an absolute bar to defamation actions based on proceedings before medical review committees and thus conflict with article I, section 21, of the Florida Constitution. Both certified questions should be answered in the affirmative.
NOTES
[*] The 1983 version of the statute has been modified by section 768.40, Florida Statutes (1985). The 1985 statute embodies many of the same elements as the 1983 version with a few noteworthy changes; specifically, subsection (2) of the 1983 statute has been modified and appears in the 1985 version as section 768.40(3)(a):

There shall be no monetary liability on the part of, and no cause of action for damages shall arise against, any member of a duly appointed medical review committee, or any health care provider furnishing any information, including information concerning the prescribing of substances listed in s. 893.03(2), to such committee, or any person, including any person acting as a witness, incident reporter to, or investigator for, a medical review committee, for any act or proceeding undertaken or performed within the scope of the functions of any such committee if the committee member or health care provider acts without intentional fraud.
Section 768.40(3)(a), Florida Statutes (1985) (emphasis added). Additionally, subsection (4) of the 1983 statute was subsequently modified and appears as the following subsection (5):
The investigations, proceedings, and records of a committee as described in the preceding subsections shall not be subject to discovery or introduction into evidence in any civil action against a provider of professional health services arising out of the matters which are the subject of evaluation and review by such committee, and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions, or other actions of such committee or any members thereof. However, information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his knowledge, but the said witness cannot be asked about his testimony before such a committee or opinions formed by him as a result of said committee hearings.
Section 768.40(5), Florida Statutes (1985).