Mr. Nicholas S. Camuccio Gilchrist Assistant County Attorney 2114 Northwest 40th Terrace Suite A-1 Gainesville, Florida 32605
Dear Mr. Camuccio:
You ask on behalf of Gilchrist County substantially the following questions:
1. Are building permits required for nonresidential farm buildings in light of section 604.50, Florida Statutes?
2. May the county require a zoning compliance permit under its land development regulations for nonresidential farm buildings?
In sum:
1. Sections 553.73(7)(c)[1] and 604.50, Florida Statutes, exempt nonresidential farm buildings located on a farm from the Florida Building Code and any county or municipal building code, making building permits unnecessary for such buildings.
2. There is no statutory provision exempting non-residential farm buildings from compliance with county land development regulations; however, local governments are prohibited from adopting any ordinance, regulation, rule, or policy to prohibit, restrict, regulate, or otherwise limit the continuing agricultural use of any land currently engaged in bona fide production of a farm product.
Question One
Prior to the 1970's, promulgation and enforcement of building codes and standards were the responsibility of local governments.[2] In 1974, the Legislature established statewide standards known as the State Minimum Building Codes.[3] In 1998, as a result of a building codes study commission report suggesting the development of a single statewide building code, the Legislature created a statewide unified building code.[4]
Part of the newly unified building code specifically addressed the exemption of certain buildings and structures from the code. Section 553.73(8), Florida Statutes (1998), stated:
"The following buildings, structures, and facilities may be exempted from the Florida Building Code as provided by law . . .
* * *
(c) Nonresidential farm buildings on farms."[5]
During the same legislative session, section 604.50, Florida Statutes, was created to provide:
"Notwithstanding any other law to the contrary, any nonresidential farm building located on a farm is exempt from the Florida Building Code and any county or municipal building code. For purposes of this section "nonresidential farm building" means any building or structure located on a farm that is not used as a residential dwelling. Farm is as defined in s. 823.14."[6]
Changes to section 553.73, Florida Statutes, during the 2000 legislative session, effective July 1, 2001, substituted "are exempt" for "may be exempt" for the enumerated buildings, structures and facilities exempted from the Florida Building Code.[7] The exemption for nonresidential farm buildings on farms remained intact. The Department of Agriculture and Consumer Services, however, was granted exclusive authority to adopt rules, pursuant to Chapter 120, Florida Statutes, providing "exceptions to nonresidential farm buildings exempted in paragraph (c) when reasonably necessary to preserve public health, safety, and welfare."[8] This office has been advised that no such rules have been adopted to date.
The exemption for nonresidential farm buildings from the Florida Building Code and any county or municipal building code in section604.50, Florida Statutes, has been in existence since 1998. The amendments to section 553.73, Florida Statutes, during the 2000 legislative session, reiterated that such buildings are not subject to the Florida Building Code.
Legislative intent controls the construction of statutes. That intent, however, is determined primarily from the language of the statute; thus, the plain meaning of the language used in the statute is the first consideration in the interpretation of a statute.[9]
The plain language of sections 553.73(7)(c) and 604.50, Florida Statutes, exempts all nonresidential buildings located on a farm from state and local building codes. Thus, to the extent that the State Minimum Building Codes require an individual to obtain a permit for the construction, alteration, repair, or demolition of a building or structure, no such permits are required for nonresidential buildings located on a farm.[10]
Question Two
Section 823.14, Florida Statutes, the "Florida Right to Farm Act (act),"[11] recognizes the importance of agricultural production to this state's economy and that the "encouragement, development, improvement, and preservation of agriculture will result in a general benefit to the health and welfare of the people of the state[.]"[12] The Legislature also recognizes that agricultural activities conducted on farmland in areas that are becoming urbanized are potentially subject to nuisance lawsuits and that such suits may encourage or force the premature removal of farm land from agricultural use. The purpose of the act, therefore, is "to protect reasonable agricultural activities conducted on farm land from nuisance suits."[13]
The act generally provides that a farm operation which has been in operation for at least one year and which was not a nuisance at the time of its established date of operation shall not be a public or private nuisance if the farm operation conforms to generally accepted agricultural and management practices.[14]
However, an existing farm operation may not expand to a more excessive operation with regard to noise, odor, dust, or fumes, if it is adjacent to an established homestead or business.[15]
Pertinent to your inquiry, section 823.14(6), Florida Statutes, provides:
"It is the intent of the Legislature to eliminate duplication of regulatory authority over farm operations as expressed in this subsection. Except as otherwise provided for in this section and s. 487.051(2), and notwithstanding any other provision of law, a local government may not adopt any ordinance, regulation, rule, or policy to prohibit, restrict, regulate, or otherwise limit an activity of a bona fide farm operation on land classified as agricultural land pursuant to s. 193.461, where such activity is regulated through implemented best-management practices or interim measures developed by the Department of Environmental Protection, the Department of Agriculture and Consumer Services, or water management districts and adopted under chapter 120 as part of a statewide or regional program. . . ."
The legislative history of this subsection states that the amendment to section 823.14, Florida Statutes, was to preclude a local government from adopting laws, ordinances, regulations, rules or policies to prohibit, restrict, regulate, or otherwise limit any continuing farm operation on any land currently engaged in bona fide production of a farm product.[16] Thus, a farming operation that falls within the coverage of section 823.14, Florida Statutes, would necessarily comply with the agricultural zoning classification of the land and would not be subject to county regulations or restrictions that attempt to limit such an operation.
Zoning is intended to control development and land use, going beyond mere standards for the construction of buildings otherwise permitted under an existing zoning classification.[17] Encompassed in zoning are restrictions on the density of development and such simple restrictions as set-back lines for construction. Such ordinances, however, must be reasonable, uniform, certain and must supply sufficient standards.[18] Moreover, an ordinance establishing setback lines without regard to public health, safety, and general welfare would be an unreasonable exercise of police power.[19]
You have advised this office that one of the primary concerns in determining whether a zoning compliance permit is required for nonresidential farm buildings is to assure that such construction complies with setback lines under the county's zoning plan. It would appear that a setback requirement would not necessarily limit a farm's operation and would, therefore, apply to such construction.
In Attorney General Opinion 99-18, this office was asked whether a county could enact zoning regulations affecting the placement of migrant farm worker facilities in residential areas, given section381.00896, Florida Statutes, prohibiting discrimination in the development and use of such facilities. While this office recognized that the prohibition must be interpreted in a manner to carry out the Legislature's intent, it was found that the plain language of the statute would not preclude a county from lawfully exercising its zoning authority and enforcing its zoning regulations to limit migrant farm worker housing facilities to areas in which such use is permitted. The Legislature had not chosen to grant a blanket exemption for migrant farm worker housing when it could have easily done so.[20]
Likewise, the prohibition against local ordinances that limit or restrict an activity of a bona fide farm operation on land that is classified as agricultural would not preclude application of zoning regulations that do not have such an intent or effect. Accordingly, it is my opinion that a nonresidential farm building would be subject to a zoning compliance permit to the extent such a permitting requirement does not prohibit, restrict, regulate or otherwise limit an activity of the farm.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] See, s. 25, Ch. 2001-186, Laws of Florida, which renumbers s. 553.73(7), Fla. Stat. (2000), back to s. 553.73(8), Fla. Stat., effective January 1, 2001.
[2] See, Florida House of Representatives Committee on Community Affairs Staff Analysis, HB 219, May 10, 2000.
[3] See, Ch. 74-167, Laws of Florida.
[4] See, Ch. 98-287, Laws of Florida.
[5] See, s. 40, Ch. 98-287, Laws of Florida.
[6] See, s. 13, Ch. 98-396, Laws of Florida. Section 823.14(3) (a), Fla. Stat., defines "Farm" as "the land, buildings, support facilities, machinery, and other appurtenances used in the production of farm or aquaculture products."
[7] See, s. 75, Ch. 2000-141, Laws of Florida, also renumbering s. 553.73(8), Fla. Stat. (1999), to s. 553.73(7), Fla. Stat.
[8] See, s. 553.73(7), Fla. Stat., also stating that the exceptions must be based upon specific criteria, such as underroof floor area, aggregate electrical service capacity, HVAC system capacity, or other building requirements.
[9] See, M.W. v. Davis, 756 So.2d 90 (Fla. 2000) (when language of statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to rules of statutory interpretation and construction as statute must be given its plain and obvious meaning); McLaughlin v. State,721 So.2d 1170 (Fla. 1998); Osborne v. Simpson, 114 So. 543 (Fla. 1927) (where statute's language is plain, definite in meaning without ambiguity, it fixes legislative intention and interpretation and construction are not needed); Holly v. Auld, 450 So.2d 217 (Fla. 1984). See also, Ops. Att'y Gen. Fla. 00-46 (2000) (where language of statute is plain and definite in meaning without ambiguity, it fixes the legislative intention such that interpretation and construction are not needed); 99-44 (1999); and 97-81 (1997).
[10] Section 553.73(1), Fla. Stat.
[11] Section 823.14(1), Fla. Stat.
[12] Section 823.14(2), Fla. Stat.
[13] Id.
[14] Section 823.14(4)(a), Fla. Stat.
[15] Section 823.14(5), Fla. Stat.
[16] Florida Senate Staff Analysis and Economic Impact Statement, CS/CS/SB 1904, April 11, 2000.
[17] See, Fountain v. City of Jacksonville, 447 So.2d 353, 355
(Fla. 1st DCA 1984) (ordinance was intended to control development and land use in the vicinity of airports and not merely to impose standards for the construction of buildings otherwise permitted under the existing zoning classifications is a zoning ordinance).
[18] See, City of Miami v. Romer, 73 So.2d 285 (Fla. 1954) andTown of Palm Beach Shores v. Doty, 100 So.2d 205 (Fla. 2d DCA 1958), aff'd 104 So.2d 508 (Fla. 1958).
[19] See, Romer, supra.
[20] See also, Op. Att'y Gen. Fla. 93-55 (1993) (city may regulate the nature and use of time-share property by zoning, but is precluded from enforcing a local ordinance that discriminates against such property).