932 So.2d 264 (2005)
In re GUARDIANSHIP OF Theresa Marie SCHIAVO, Deceased.
Department of Children and Family Services, Appellant,
v.
Michael Schiavo, as Guardian of the person of Theresa Marie Schiavo, Appellee.
No. 2D05-1455.
District Court of Appeal of Florida, Second District.
September 16, 2005.
William Frederic Jung of Jung & Sisco, Tampa; and Jack Emory Farley and Jeffrey Dana Gillen, Lakeland, for Appellant.
George J. Felos of Felos & Felos, P.A., Dunedin, for Appellee.
ALTENBERND, Judge.
The Department of Children and Family Services (DCF) appeals an emergency order enforcing mandate, which was entered by the probate court on March 23, 2005. This order was entered after Theresa Marie Schiavo's feeding tube was removed on March 18, 2005, and before her death on March 31, 2005. On March 30, 2005, this court issued a per curiam opinion affirming the order on appeal and indicating that an additional written opinion explaining the court's ruling would follow. This is that additional written opinion.[1]
*265 On March 23, 2005, the DCF filed a motion to intervene in the Guardianship of Theresa Marie Schiavo. The motion gave notice to the court pursuant to section 415.1055(9), Florida Statutes (2004), that the DCF had received a report alleging that the court-appointed guardian had abused the ward. The motion explained that chapter 415 gives the DCF the power to investigate claims of abuse, neglect, or exploitation of vulnerable adults. The motion further explained that the DCF may arrange for protective services for an abused, vulnerable adult on a nonemergency basis without the consent of the adult by filing a petition with the circuit court. § 415.1051(1). In an emergency, the DCF may enter premises and remove a vulnerable adult to a medical facility for treatment to prevent serious physical injury or death. § 415.1051(2).
The motion alleged that the DCF had received a medical opinion that challenged the diagnosis relied upon by the probate court when it entered its final judgment authorizing the removal of the feeding tube. The DCF also alleged that it had received many reports of abuse on its hotline concerning Theresa Marie Schiavo and that it had an obligation to investigate those claims. The DCF took the position that it could not conduct its investigation if the terms of the final judgment were carried out and Theresa Marie Schiavo died. Essentially, the DCF wished to intervene in the proceeding so that it could take custody of Theresa Marie Schiavo and reinsert the feeding tube without violating the court's final judgment.
At the time the DCF filed its motion, the removal of Theresa Marie Schiavo's feeding tube was being challenged by many parties in virtually every available court. In order to accommodate these challenges, the courts dispensed with normal time restrictions and attempted to streamline legal procedures. The probate court was no exception.
The guardian immediately responded to the DCF's motion by making an emergency oral motion to enforce mandate. A hearing was held on March 23, 2005, with oral notice given to the DCF. All relevant parties participated in that hearing. Following the hearing, the probate court entered an order restraining the DCF "from taking possession of Theresa Marie Schiavo or removing her from the Hospice Woodside facility, administering nutrition or hydration artificially, or otherwise interfering with this Court's final judgment." This is the order that the DCF appealed.[2]
At the broadest level, this appeal concerns the competing powers given to the judiciary in chapter 744, Florida Statutes (2004), and to the DCF in chapter 415. Chapter 744 gives extensive authority to the judiciary to establish guardianships, including guardianships for persons who fall within the definition of "vulnerable adults" under section 415.102(26). See § 744.3031. Chapter 415 gives authority to the DCF to protect vulnerable adults both before a guardianship has been established and thereafter.
When a vulnerable adult does not consent to protective services by the DCF in a nonemergency situation, the DCF typically files a petition in circuit court to obtain authority to provide those services. § 415.1051(1)(a). If the court authorizes protective services, the DCF must petition the court within sixty days to determine *266 how to best proceed. § 415.1051(1)(e)(1). One of the options available at that time is the creation of a guardianship under chapter 744. § 415.1051(1)(e)(1)(d). The rules are essentially the same in an emergency, except that the DCF can perform the removal of the vulnerable adult and begin providing protective services prior to filing a petition and holding a hearing. § 415.1051(2)(b), (c). The petition must be filed and heard by the circuit court within four business days of the emergency removal. § 415.1051(2)(f).
Because the statutes contemplate that an extended term of vulnerability can be addressed by the creation of a guardianship under chapter 744, it might be logical to structure the respective powers of the circuit court and the DCF so that the DCF had no authority to interfere once a chapter 744 guardianship had been established. Certainly, it is probable that the DCF will rarely need to use its powers under chapter 415 concerning a person who is already the ward of a judicially created guardianship under chapter 744.
On the other hand, it is possible for a guardian to abuse or neglect a ward, and chapter 415 is written to give the DCF some power over abusive guardians. "Guardian" is defined in chapter 415 to include a guardian under chapter 744. § 415.102(11). Section 415.1051(4) contains special provisions for protective services when the vulnerable adult has a guardian. This statute expressly gives the DCF power to perform an emergency removal of a ward from the care of a guardian prior to a judicial hearing.
In this case, however, the narrower issue is whether the DCF can use these powers to remove a ward from the control of the guardian in order to restore a feeding tube that had been removed at the express order of the circuit court in a postjudgment order, after the final judgment authorizing removal of the feeding tube has been reviewed and affirmed in all available appellate venues. The primary "abuse" alleged by the DCF was the guardian's decision to obey the specific directives of the probate court's order.
We conclude that chapter 415 does not give the DCF power to declare the acts of a guardian that are in strict compliance with an explicit, lawful order of a guardianship court to be actions constituting neglect, abuse, or exploitation. Once the guardian asked the court to authorize removal of the feeding tube in 1998, the State undoubtedly had an interest in the issues that were litigated in this case. The State has participated in such cases in the past. See, e.g., State v. Herbert (In re Guardianship of Browning), 568 So.2d 4 (Fla.1990); Satz v. Perlmutter, 362 So.2d 160 (Fla. 4th DCA 1978). The executive branch of state government, either through the Attorney General or through the DCF, undoubtedly had standing to intervene in this case years before the probate court entered the order on March 18, 2005, requiring the guardian to remove the feeding tube. It did not, however, have the power to wait on the sidelines until those proceedings were final and the order had been implemented and then challenge the judicial decision as "abuse" under chapter 415. This is particularly true of an order discontinuing a form of medical treatment because section 415.113 expressly provides that nothing in chapter 415 shall be construed to "require any medical care or treatment in contravention of the stated or implied objection of such person." The entire purpose of the litigation in the probate court had been to determine the treatment that the ward herself would have selected under these circumstances. See Schindler v. Schiavo (In re Guardianship of Schiavo), 780 So.2d 176 (Fla. 2d DCA 2001).
To the extent that the DCF suggested that it needed to take possession of Theresa *267 Marie Schiavo in order to conduct its investigation of the various claims of abuse it had received on its hotline, the DCF never explained why that investigation would necessitate a further delay of the court's final judgment. The ward, of course, could not communicate or assist the DCF in any investigation, and the DCF did not provide any reasoned explanation of why its investigation required this extraordinary action. The probate court clearly had discretion to conclude that this request was not a sufficient basis for it to rescind its order.
The probate court correctly ruled that the powers given to the DCF in chapter 415 did not permit the DCF to challenge the final order of the probate court in this manner. We trust that the DCF would have obeyed the probate court without a formal restraining order, but in light of all of the circumstances in March 2005, the trial court was well within its power to issue a restraining order to assure continued compliance with its order.
Affirmed.
FULMER, C.J., and WALLACE, J., Concur.
NOTES
[1] The DCF has suggested that this appeal should be dismissed as moot. However, we issued our per curiam decision at a time when this case was not moot and was of great public importance, stating, "Affirmed; an opinion will follow." We do not believe that the doctrine of mootness allows us to avoid explaining a decision when it is issued in such an expedited fashion. However, even if the doctrine of mootness were to apply, it would not destroy our jurisdiction because there are issues of great public importance raised by this case. See Holly v. Auld, 450 So.2d 217, 218 (Fla.1984) (explaining that mootness does not destroy an appellate court's jurisdiction when questions raised are of great public importance or are likely to recur).
[2] Although this order is not a final order as to the DCF, we have jurisdiction of this appeal as a reviewable nonfinal order under Florida Rule of Appellate Procedure 9.130(a)(3)(B) or (4).