CRENSHAW, Judge.
*441 Dr. Hadi Hakki appeals the trial court's order dismissing with prejudice his second amended complaint for defamation and defamation by implication against Northside Hospital. Because the trial court erred in concluding that Dr. Hakki failed to sufficiently plead intentional fraud on the part of the hospital, we reverse.
In his second amended complaint, Dr. Hakki alleged that after he was named chief of surgery at the hospital in 2007, he discovered that the hospital was filing false reports regarding cardiac surgery mortality, morbidity, complications, and other data to the Society of Thoracic Surgery, which, in turn, reports this data to the Center for Medicare and Medicaid Services (CMS). The hospital allegedly made these false, inflated reports so that it could obtain higher reimbursements for its services from CMS. When Dr. Hakki confronted the hospital regarding the fraudulent reporting, it not only refused to take any action, it continued to file the fabricated reports and "threatened Dr. Hakki that [the hospital] would destroy Dr. Hakki's career if Dr. Hakki did not keep quiet." Because the hospital continued to file the fraudulent reports, Dr. Hakki reported the hospital to authorities. Once the hospital learned of Dr. Hakki's refusal to heed its threat, "Chief Medical Officer Nutinsky told Dr. Hakki that ... President Daugherty directed Nutinsky to take whatever action was necessary [to] destroy Dr. Hakki's career, starting with the removal of his medical staff privileges at [the hospital] and making adverse reports about Dr. Hakki to governmental agencies." (Emphasis added).
Dr. Hakki further alleged that in 2008 he met with Wassemer, a member of the hospital's board of trustees; Salazar, the hospital's chief of staff; and Nutinsky, at which point they
demanded that Dr. Hakki voluntarily relinquish his ... medical staff privileges in Vascular Surgery, and threatened that if Dr. Hakki did not comply [the hospital], Wassemer, Salazar[,] and Nutinsky would recommend to the [medical executive committee] and the [hospital's] Board of Trustees that Dr. Hakki's ... medical staff privileges be revoked or not renewed, and further threatened that [the hospital] will report Dr. Hakki to the National Practitioner's Data Bank [NPDB], stating that this NPDB report will ruin his career since no hospital in the country will approve staff privileges thereafter, and no other state will grant him a medical license. When Dr. Hakki refused [the hospital's] request, in a later conversation, with Nutinsky, to relinquish his vascular staff privileges, Nutinsky told Dr. Hakki that Dr. Hakki's report of [the hospital's] fraudulent reporting was the cause of all Dr. Hakki's problems and that [the hospital] would report Dr. Hakki to the NPDB and destroy his career.
According to Dr. Hakki, the hospital, through Nutinsky, made good on its threat by knowingly making false representations to the hospital's board of trustees regarding Dr. Hakki with the intent that the board would rely on the false representations and deny the reappointment of Dr. Hakki's staff privileges-which it did. As a result, and as part of its compliance with 45 C.F.R. § 60.12 (2010), the hospital then filed an adverse action report containing those false representations with the NPDB, which incorporated the false information into its database-a tool utilized by hospitals, professional societies, state licensing boards, insurance providers, malpractice carriers, and patients to obtain information about physicians such as Dr. Hakki. Attached to his complaint, Dr. Hakki included the NPDB report as well *442 as letters from his physician colleagues who had personal knowledge that the information contained in the NPDB report was false. He alleged that the hospital intentionally filed this false adverse action report to punish him for exposing the hospital's fabrication of cardiac surgery data to CMS and that he has suffered a multitude of damages as a result.
The hospital moved to dismiss Dr. Hakki's second amended complaint on the basis that it was immune from the suit pursuant to sections 395.0191(7) and 395.0193(5), Florida Statutes (2010), because Dr. Hakki's allegations arose out of or were related to actions taken by the hospital during the reappointment and internal investigation processes surrounding Dr. Hakki's staff privileges. The hospital contended that Dr. Hakki could not overcome the statutory immunities because he failed to plead, with particularity, the existence of extrinsic evidence of intentional fraud on the part of the hospital as Dr. Hakki's allegations of false representations concern matters intrinsic to the hospital's actions in carrying out its duties under the statutes. Dr. Hakki responded that the immunities did not apply because his allegations concern the report provided to the NPDB, which is protected by 42 U.S.C. § 11137(c) (2006), not sections 395.0191(7) and 395.0193(5), and even if the immunities did apply, he specifically alleged that the hospital engaged in intentional fraud.
Relying on Lawnwood Medical Center, Inc. v. Desai, 54 So.3d 1027 (Fla. 4th DCA 2011), the trial court agreed with the hospital that the immunity in section 395.0191(7) barred Dr. Hakki's suit because his allegations arose out of the hospital's actions "relating to [Dr. Hakki's] application for reappointment for staff membership and clinical privileges" and he "failed to plead acts of intentional fraud by [the hospital] in order to avoid dismissal."
We review the trial court's dismissal de novo. Brooke v. Shumaker, Loop & Kendrick, LLP, 828 So.2d 1078, 1080 (Fla. 2d DCA 2002) (citing Value Rent-A-Car, Inc. v. Grace, 794 So.2d 619 (Fla. 2d DCA 2001) ). Dr. Hakki argues that the immunity does not apply because his allegations concern representations made in the NPDB report-conduct that occurred outside of the reappointment process-and, even if the immunity does apply, he pleaded the existence of extrinsic evidence of intentional fraud on the part of the hospital sufficient to overcome the immunity. The hospital responds that it is immune because the filing of the NPDB report arose out of the reappointment process and Dr. Hakki's complaint includes only unspecified, conclusory allegations of fraud.
We conclude that, even assuming Dr. Hakki's complaint arose out of the reappointment process such that the immunity in section 395.0191(7) applies, the trial court nevertheless erred in its determination that Dr. Hakki failed to plead acts of intentional fraud on the part of the hospital. The trial court correctly observed that Dr. Hakki had the burden to plead extrinsic evidence of intentional fraud with particularity in order to avoid the immunity under section 395.0191(7). See Dhaduvai v. Belsito, 663 So.2d 1356, 1357 (Fla. 2d DCA 1995) (citing Feldman v. Glucroft, 522 So.2d 798 (Fla. 1988) ); Desai, 54 So.3d at 1030. The requirement to allege the existence of extrinsic evidence derives from section 395.0191(8)'s prohibition on discovery and admission into evidence of the "investigations, proceedings, and records of the board ... in any civil action against a provider of professional health services arising out of matters which are the subject of evaluation and review by such board." See also *443 Dhaduvai, 663 So.2d at 1357. But, that statute goes on to clarify that
information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such board; nor should any person who testifies before such board or who is a member of such board be prevented from testifying as to matters within his or her knowledge, but such witness cannot be asked about his or her testimony before such a board or opinions formed by him or her as a result of such board hearings.
§ 395.0191(8) ; cf. Feldman, 522 So.2d at 800-01 (discussing an analogous pleading requirement).
Accepting the allegations in the complaint as true and construing them in the light most favorable to him, see Brooke, 828 So.2d at 1080, Dr. Hakki sufficiently pleaded the existence of extrinsic evidence of intentional fraud with particularity. Unlike the doctor in Desai, who "generally alleged the Board 'arbitrarily, capriciously, fraudulently, and maliciously denied' his application," 54 So.3d at 1030, here, Dr. Hakki provided particularized allegations regarding specific statements the hospital made to Dr. Hakki before the reappointment process began demonstrating that the hospital engaged in intentional fraud by knowingly making false statements in an adverse action report to the NPDB in order to ruin Dr. Hakki's career as retaliation for his whistleblowing actions. He also provided the NPDB report-a record available from the NPDB, not from the board-and letters from witnesses who had personal knowledge that the information contained in the report was false. Cf. Feldman, 522 So.2d at 801 ("The shield of confidentiality protects what is presented or spoken to the committee at its meetings. If that information is available from other than committee sources, then it may be used in a defamation action, which must be based on ... intentional fraud ...."). Thus, Dr. Hakki's allegations show that he could present evidence not protected by section 395.0191(8) demonstrating that the hospital engaged in intentional fraud by scheming to manipulate the reappointment and NPDB reporting processes through the use of false statements in order to destroy Dr. Hakki's career.
Accordingly, we reverse the order dismissing Dr. Hakki's complaint with prejudice and remand for further proceedings.
Reversed and remanded.
MORRIS and ROTHSTEIN-YOUAKIM, JJ., Concur.