CASANUEVA, Judge.
Collier County seeks review of an order denying approval of a joint settlement agreement (Settlement Agreement). Approval of the Settlement Agreement was sought pursuant to the Bert J. Harris, Jr., Private Property Rights Protection Act, section 70.001, Florida Statutes (2008)[1] *37 (the Bert Harris Act), and the Settlement Agreement attempted to resolve alleged Bert Harris Act and regulatory taking claims. The trial court denied approval of the Settlement Agreement, finding it would contravene the application of laws and regulations without protecting the public interests served by such laws and regulations, including the Growth Policy Act[2] and the Federal Endangered Species Act.[3] We conclude the Bert Harris Act presuit settlement procedures were not available to the parties at the time they entered into the Settlement Agreement and thus affirm the trial court’s order denying approval as right for the wrong reasons. We write to address only the issue of timing and decline to address the remaining legal conclusions reached by the trial court.
Background
This matter arises from two consolidated actions in which property owners Francis D. Hussey, Jr., Mary P. Hussey, Winchester Lakes Corporation, Sean Hussey, Jr., Successor Trustee to Jose Lombillo, Trustee, and Eduardo Pereiro, Trustee (collectively “the Property Owners”) sued Collier County (“the County”), the Governor of Florida (in his official capacity), and the Florida Department of Community Affairs (now the Florida Department of Economic Opportunity), seeking damages in excess of $91,000,000 for alleged Bert Harris Act and regulatory taking claims. The Property Owners’ claims stem primarily from a 2002 amendment to Collier County’s Growth Management Plan referred to as the “Rural Fringe Amendment.” This amendment identified certain lands as either “sending lands” or “receiving lands” and imposed greater development and use restrictions on the sending lands based on the heightened environmental value and sensitivity of those lands. Collier Cnty., Fla., Ordinance No. 2002-32 (June 19, 2002). Pursuant to the amendment, approximately 1000 acres of undeveloped land owned by the Property Owners were designated “sending lands,” resulting in new restrictions on development and use.
The Property Owners presented a written notice of Bert Harris Act claim in 2004, and subsequently filed their consolidated lawsuits in 2008 alleging damages under the Bert Harris Act and inverse condemnation due to the Rural Fringe Amendment sending lands designation. The Florida Wildlife Federation and Collier County Audubon Society were permitted to intervene in the actions. After several amendments to the complaints, the lawsuits were dismissed with prejudice for failure to state a cause of action. The Property Owners appealed the dismissals.[4] During the pendency of the appeals, the County and the Property Owners entered into a Settlement Agreement, dated February 12, 2018. The parties filed motions with this court seeking remand for the trial court to consider approval of the Settlement Agreement, pursuant to section 70.001(4)(d)(2), which requires court approval of a Bert Harris Act presuit settlement agreement when it would have the effect of contravening the application of a statute. This court treated the motions for remand as motions to relinquish jurisdiction and granted the motions.
*38 The trial court summarized the remedies provided for in the Settlement Agreement as follows:
a. the designation of the northerly 578 acres of real property owned by Francis D. Hussey, Jr. and Mary P. Hussey (“Hussey Lands”) will be changed from Sending Lands to Receiving Lands;
b. the remainder of the Hussey Lands will remain designated as Sending Lands;
c. the designation of 578 acres of other real property, known as the “SR 846 Lands,” will be changed from Receiving Lands to Sending Lands;
d. within 180 days following the effective date of the Settlement Agreement, Francis D. Hussey, Jr. and Mary P. Hussey shall deed to Collier County 180 feet of right-of-way for the future Wilson Boulevard Extension;
e. to exchange 22.318 acres of road right-of-way for $55,795 of transportation impact fees;
f. to reduce the Collier Plan vegetation preservation requirements on [Property Owners’] North Belle Meade property;
g. to waive the current 25-year prohibition on transferred developmental rights being generated by the [Property Owners’] North Belle Meade property due to the [Property Owners’] recent land clearing activities;
h. to grant the [Property Owners] access to at least two locations to the future Wilson Boulevard Extension;
i. to waive the current native vegetation baseline date of June 19, 2002, for the vegetation on the [Property Owners’] North Belle Meade property; and
j.to grant the northern SR 846 Lands parcel the right to be developed as a Planned Unit Development (PUD).
The circuit court denied approval of the Settlement Agreement, concluding that it would, pursuant to the Bert Harris Act, result in contravening laws and regulations, but that it did not protect the public interest served by the contravened laws and regulations. As such, the court concluded the Settlement Agreement did not comply with the statutory standard set out in section 70.001(4)(d)(2).
We agree with the result of disapproving the Settlement Agreement, but because it clearly does not comply with the timeline provided for presuit settlement agreements set out in section 70.001(4).
Standard of Review
The interpretation of a statute is a question of law subject to de novo review. See Se. Floating Docks, Inc. v. Auto-Owners Ins. Co., 82 So.3d 73, 78 (Fla.2012). In Hill v. Davis, 70 So.3d 572, 575-76 (Fla. 2011), the supreme court sets out the following principles of statutory interpretation:
“Legislative intent guides statutory analysis, and to discern that intent we must look first to the language of the statute and its plain meaning.” In this regard, “legislative intent is determined primarily from the text” of the statute. This is because “the statute’s text is the most reliable and authoritative expression of the Legislature’s intent.” Courts are “without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power.” “Thus, if the meaning of the statute is clear then this Court’s task goes no further than applying the plain language of the statute.”
*39 (Citations omitted). Accordingly, our first task is to examine the statutory text at issue in this case.
Discussion
The Bert Harris Act establishes a cause of action providing relief, or payment of compensation, for real property owners when a new law, rule, regulation, or ordinance of the state or a political entity of the state, as applied, has inordinately burdened an existing use of real property or a vested right to a specific use of real property without amounting to a taking. § 70.001(l)-(2). The Act provides for a mandatory presuit procedure, set out in section 70.001(4), pursuant to which the property owner must present written notice of its Bert Harris Act claim to the relevant governmental entity not less than 180 days[5] prior to filing a lawsuit under the Act.
During that 180-day period, unless extended by agreement of the parties, the governmental entity shall make a written settlement offer to effectuate the remedies enumerated in section 70.001(4)(c)(l)-(ll). For example, the governmental entity may offer an adjustment of land development or permit standards, modifications in density or use, transfer of developmental rights, land swaps, payments in lieu of onsite mitigation, location on the least sensitive portion of the property, issuance of a variance, and purchase of the real property by a governmental entity. § 70.001(4)(c) (listing the types of relief which may be included in a settlement offer and implemented by the governmental entity if the settlement offer is accepted).
If the governmental entity and property owner enter into a settlement agreement under section 70.001(4) which would have the effect of contravening the application of a statute that would otherwise apply to the subject property, the parties to the settlement agreement must file an action in the circuit court seeking approval of the settlement agreement “to ensure that the relief granted protects the public interest served by the statute at issue and is the appropriate relief necessary to prevent the governmental regulatory effort from inordinately burdening the real property.” § 70.001(4)(2). If the property owner rejects the settlement offer by the governmental entity, the owner may file a claim for compensation in the circuit court. § 70.001(5)(b).[6]
In this case, the trial court rightly questioned whether it had jurisdiction to conduct a section 70.001(4)(d) review of the Settlement Agreement. However, the trial court improperly relied on Charlotte County Park of Commerce, LLC v. Charlotte County, 927 So.2d 236, 237 (Fla. 2d DCA 2006), to conclude it did have jurisdiction.
In Charlotte County Park of Commerce, the property owner had presented a Bert Harris Act claim notice but had not yet filed a lawsuit under the Act when the property owner and Charlotte County entered into a settlement agreement. The settlement agreement addressed several disputes between the county and property owner, including claims raised in a previously-filed lawsuit which did not include a Bert Harris Act claim for damages. Id. When the property owner sought a writ of mandamus compelling the county to comply with the section 70.001(4)(d)(2) approv *40 al procedures, the county argued that the settlement agreement did not and could not have settled the Bert Harris Act claim because the owner had not filed a lawsuit under the Bert Harris Act. The trial court agreed, and this court reversed, stating:
The trial court erred in concluding that CCPC did not have a Bert Harris claim that the parties could settle simply because it had not filed suit. Indeed, the Bert Harris Act contemplates the potential resolution of claims made against a governmental entity during the presuit period without resort to suit by the property owner. CCPC had made a Bert Harris claim; it simply had not filed an action with the court for relief under the Bert Harris Act.
Id. at 239. The case was remanded back to the trial court for a determination as to whether it was the parties’ intention that the settlement agreement resolve the Bert Harris Act claim. Id.
In the instant case, the trial court found that “it [was] clear that the parties [were] attempting to settle the claims pursuant to the Act” and thus proceeded to address the Agreement on the merits. This was error, as the Property Owners in the instant case had filed a lawsuit seeking compensation under the Bert Harris Act, and the Settlement Agreement was entered into a full four-and-a-half years later.
Though the trial court erred in determining it had jurisdiction to consider the merits of the Settlement Agreement under section 70.001(4)(d)(2), a review of the clear, unambiguous language of section 70.001(4) leads us to conclude that the denial of approval of the Agreement is nonetheless the correct result. The Bert Harris Act seeks to encourage settlement and, in fact, requires that the relevant governmental agency present the property owner with a settlement offer during the Act’s presuit period. § 70.001(4)(c). To further encourage such early settlement, the Act sets out available remedies which may result in contravening otherwise applicable regulations and statutes. § 70.001(4)(c). When a settlement agreement incorporates remedies that result in the contravention of a statute, the parties must obtain court approval of the settlement agreement through the procedure set out in section 70.001(4)(d)(2).
When the parties are unable to reach a settlement agreement, and after the ripeness prerequisite has been met, the property owner may “file a claim for compensation in the circuit court.” § 70.001(5)(b) (emphasis added). At the point of filing the circuit court action for compensation, the section 70.001(4)(c) presuit settlement negotiations have concluded, and the issue remaining pertains to whether the property owner is entitled to compensation and, if so, how much. While the parties may well choose to enter into settlement negotiations during the pendency of the compensation lawsuit, such negotiations do not take place pursuant to the section 70.001(4) presuit settlement procedures, including the procedure providing for contravention of statutes. See § 70.001(8) (“This section does not supplant methods agreed to by the parties and lawfully available for arbitration, mediation, or other forms of alternative dispute resolution, and governmental entities are encouraged to utilize such methods to augment or facilitate the processes and actions contemplated by this section.”).
The Bert Harris Act sets forth a specific timeline for providing notice of a claim, presentation of a settlement offer, and filing of a lawsuit for compensation. § 70.001(4)-(5). The timeline as to when a governmental entity shall make a written settlement offer to effectuate the available remedies set out in section 70.001(4)(c)(l)-(11) is clear and unambiguous, and courts are without power to construe this unam *41 biguous statute in a way which would extend its express terms or its reasonable and obvious implications. Hill, 70 So.3d at 575; Holly v. Auld, 450 So.2d 217, 219 (Fla.1984). To do so would be contrary to the intent of the legislature to encourage early settlement of Bert Harris Act claims.
Conclusion
As the Settlement Agreement at issue in this case does not comply with the clear and unambiguous presuit settlement time-line set forth in section 70.001(4), and as the trial court was constrained from extending the availability of section 70.001(4) presuit settlements, the trial court was without jurisdiction to review and approve the Settlement Agreement pursuant to section 70.001(4)(d)(2). The order denying approval is therefore right for the wrong reasons, and we affirm.[7]
Affirmed.
NORTHCUTT and KELLY, JJ., Concur.

. As the lawsuit which the parties sought to settle was filed in September 2008, we will refer to the 2008 version of the Bert Harris Act for purposes of this appeal. Though amendments were made to the Act after the filing of the lawsuit but prior to the date of the Settlement Agreement, including a reduction of the presuit period identified in section 70.001(4) from 180 days to 150 days, these amendments are not material to the resolution of this case. Accordingly, whether the *37 2008 or later version of the Act is applied, our analysis and result remain the same.

. Ch. 163, Fla. Stat. (2013).

. 7 U.S.C. § 136, 16 U.S.C. § 1531 et seq. (2013).

.Hussey v. Collier Cnty., No. 2D 11-1223 (Fla. 2d DCA filed Mar. 11, 2011), and Hussey v. Collier Cnty., 2D11-1224 (Fla. 2d DCA filed Mar. 11, 2011).

. Amendments made to the Bert Harris Act, effective July 1, 2011, reduced the presuit period identified in section 70.001(4) from 180 days to 150 days. For property classified as agricultural, the notice period is 90 days. § 70.001(4)(a).

. Section 70.001(5) includes an additional "ripeness decision” prerequisite to filing a lawsuit for compensation.

. See Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 645 (Fla. 1999) (‘‘[I]f a trial court reaches the right result, but for the wrong reasons, it will be Upheld if there is any basis which would support the judgment in the record.”); Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla.1979) ("Even when based on erroneous reasoning, a conclusion or decision of a trial court will generally be affirmed if the evidence or an alternative theory supports it.”).