963 So.2d 251 (2006)
Curtis SHERROD, Appellant,
v.
The PALM BEACH COUNTY SCHOOL BOARD, Appellee.
No. 4D06-590.
District Court of Appeal of Florida, Fourth District.
November 8, 2006.
Rehearing Denied September 19, 2007.
Pamela Cazares and Thomas L. Johnson of Chamblee, Johnson & Haynes, P.A., Brandon, for appellant.
Randall D. Burks, School Board of Palm Beach County, West Palm Beach, for appellee.
FARMER, J.
In the 2003-04 school year, the School Board of Palm Beach County (SBPBC) brought formal proceedings against a career contract teacher to discharge him from the position. An Administrative Law Judge (ALJ) was appointed by the Division of Administrative Hearings. After hearing testimony and receiving other evidence, the ALJ entered a recommended order for discharge, which SBPBC adopted. He appeals. We reverse.
The 2003 version of section 1012.34(3), Florida Statutes, provides that "[t]he assessment procedure for instructional personnel . . . must be primarily based on the performance of students assigned to their classrooms. . . ."[1] [e.s.] The statute adds that an annual assessment:
"must primarily use data and indicators of improvement in student performance assessed annually as specified in s. 1008.22 and may consider results of peer reviews in evaluating the employee's performance." [e.s.]
§ 1012.34(3)(a), Fla. Stat. (2003).
In substance the evidence adduced by SBPBC was this. In prior years there *252 were complaints about teacher's classroom presentation of subject matter; communication; learning environment; planning; record keeping; working relationships with coworkers; and policies, procedure, and ethics. None of these led to any proceedings for discharge. At the end of the year in which those comments were made, he was transferred to another school. New complaints there involved "excessive and inappropriate use of R-rated videos, his failure to timely post student grades, and his failure to provide instruction . . . consistent with timelines suggested for teachers to complete instruction on all covered materials. . . ." It was further said that he failed to enter student grades into the system, making it difficult to assess student performance. It was further said that he did not administer his classes well and failed to exercise proper control over students, who would "blurt out" comments without remonstrance from him. He was also alleged to rely on group student work, rather than lecturing to them. He was thereupon placed on probation for 90 days, but because of health he did not finish that year.
In the next school year, 2003-04, he was again transferred to still another school. His probation was started anew and extended to give time for compliance. Yet his principal there found that he failed to follow a lesson plan and that the students had no required text to read and follow. In February, the superintendent advised him that he would recommend termination. The teacher requested the formal hearing, the results of which we now review.
As the substance of the evidence shows, SBPBC presented no evidence of student performance on prescribed annual tests. Therefore, SBPBC did not "primarily base" its decision on the "performance of students assigned" to appellant's classroom. Nor can it be said that its assessment "primarily use[d] data and indicators of improvement in student performance assessed annually as specified in s. 1008.22." Not only did it not use such data primarily, in fact it did not make any use of such data. Appellant argues that its decision is thus not based on the applicable law and should be reversed.
SBPBC argues that student performance need not be the primary focus in teacher performance assessment if other factors are "properly deemed more crucial." "Logic dictates," SBPBC argues, that annual student assessments are not always the best means in evaluating the effectiveness or skills of a teacher. For example, SBPBC contends, if students are able to make progress on the annual test in spite of the teacher's deficiencies in every other sense, it should not be required to retain that instructor. Moreover, SBPBC points out that the law requires 90 calendar days for probationary periods following an unsatisfactory evaluation before termination. If a teacher's performance is deemed substandard early in the school year but annual tests are not available until year-end, it is argued that the legislature could not have intended assessment based on results after the 90 day period.
As a matter of policy these professional educators and the School Board may be well taken in these arguments. Parents, teachers, and administrators should know whether such testing, as is required by these laws, is reliable in measuring the effectiveness of individual teachers in particular subjects. Indeed, they may be right that the FCAT is not reliable. The problem for them and this court, however, is that the statute requiring primary reliance on the FCAT and similar tests leaves no room for the free-form exercise of professional expertise they advocate. Section 1012.34 does not allow this kind of discretion *253 even if it is deemed superior by those with advanced evaluation skills.
It strikes us as logical that in "magnet" schools, like the one involved here, students who are motivated to learn may succeed on standardized tests like FCAT in spite of poor teaching. These students might have learned more and better with competent teachers than poor ones, and the FCAT may not reflect that. For those students utterly dependent on the skills of their teachers, the test may have some validity. With primary reliance on these annual tests, however, it seems plausible that the system could end up teaching of and for the annual tests. Superior students who might have achieved their promise with competent teachers could go unfulfilled, and many students could end up being good at taking tests but inadequate in self-learning.
Whether these fears are true, however, and how these consequences might be addressed is not for us on appellate review. Any remedy lies with the Legislature. As a court, we are not authorized to pass on the wisdom of these statutesto rely instead on the wise alternative counsel of those who run this school district. When the meaning of a statute is plain, as here, our role is to enforce the law as written. See Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (state courts lack power to construe an unambiguous statute to extend, modify, or limit its express terms or its reasonable and obvious implications; to do so would abrogate legislative power). Section 1012.34(3) plainly says that the student performance on annual tests must be the "primary basis" for teacher evaluation. It does not say that these annual tests "may" play a role. If the statute had instead used may in place of shall, SBPBC might then have exercised its professional discretion to evaluate the performance of a teacher as it sought to do in this case. But the term primary in the statute unmistakably makes student performance on annual tests the first consideration in any teacher evaluation. And because the requirement of 90 calendar days for compliance should be given effect, the issue of termination may have to stretch over two school years.
SBPBC suggests that horrible consequences will inevitably follow if we sustain appellant's interpretation of the statute. We point out, however, that criminal acts, mental diseases or defects, and similar deficiencies ungrounded in the teaching art, are not the subject of this teacher's alleged faults.[2] In circumstances such as those presented here, where the factors relied on by SBPBC for termination are confined to pedagogical method rather than personal conduct unquestionably showing unfitness for teaching, the statute in question requires the school board to base a decision to terminate primarily on student performance on the annual tests. Because that was not done here, we have no alternative but to reverse the final order of SBPBC discharging appellant and return this case to the agency for further consistent proceedings. See § 120.68(7), Fla. Stat. (2006).
Reversed.
GUNTHER, J., and KRATHEN, DAVID H., Associate Judge, concur.
NOTES
[1] We agree with appellant that the applicable version of section 1012.34 is the one in effect when the evaluation was made on which termination proceedings were begun. The later change in section 1012.34 does not apply in this case.
[2] See § 1012.32(4)(c), Fla. Stat. (2003).