DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**I.J.,** a child,
Appellee.

No. 4D17-2982

[November 7, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Carlos S. Rebollo, Judge; L.T. Case No. 17-001314-DLB.

Pamela Jo Bondi, Attorney General, Tallahassee, and Alexandra A. Folley, Assistant Attorney General, West Palm Beach, for appellant.

Carey Haughwout, Public Defender, and Patrick B. Burke, Assistant Public Defender, West Palm Beach, for appellee.

CONNER, J.

The State of Florida appeals the trial court's delinquency disposition asserting the trial court erred by failing to commit I.J. to a mandatory fifteen days in secure detention for the offense of armed burglary of a conveyance.[1] We agree that the fifteen days' detention was a mandatory enhancement for disposition under the facts of this case, and therefore, we reverse and remand the disposition of that charge.

*Background*

A witness reported that she saw four males attempting to open car door handles in a parking lot. Officers responded, set up a perimeter, and I.J. was apprehended and placed under arrest. While detaining I.J., the officers learned that a handgun had been taken from one of the vehicles burglarized by the four suspects. I.J. told the officers that he knew where the missing handgun was located and took the officers to the location

---

[1] The State does not appeal the dispositions of the other charges to which I.J. pled.

where the handgun was found.

One of the other suspects, the co-defendant, told officers that a third suspect (not I.J.) handed him the gun, so he hid the gun in the bush where it was found. The co-defendant "did not say who removed the gun from the vehicle."

I.J. was charged with armed burglary of a conveyance, grand theft of a firearm, burglary of a conveyance, and resisting without violence. He entered a plea to all four counts. At the plea hearing, the State mentioned that "given that [this] is a firearm case, it was explained at staffing that this would require 15-day mandatory detention" pursuant to section 790.22(9)(a), Florida Statutes (2017). I.J.'s counsel stated that he "never possessed a gun personally," so it was "kind of difficult to comprehend" that he would face the enhancement. The trial court agreed to reset the case, so that both parties could further research the issue.

When the disposition hearing commenced, the State relied on and cited to a case from the Third District, *State v. R.C.S.*, 837 So. 2d 517 (Fla. 3d DCA 2003), arguing that the case held that the juvenile defendant did not have to personally use or possess a firearm for the enhancement statute to apply. In opposition, I.J. relied on our decision in *B.O. v. State*, 25 So. 3d 586 (Fla. 4th DCA 2009), contending *B.O.* requires actual possession to impose the detention penalty. The trial court agreed with I.J., and declined to impose the fifteen days in secure detention requested by the State. The State gave notice of appeal.

*Appellate Analysis*

"The legality of a sentence is a question of law and is subject to *de novo* review." *Flowers v. State*, 899 So. 2d 1257, 1259 (Fla. 4th DCA 2005). "We also review de novo a trial court's interpretation of a statute." *State v. Sanchez*, 133 So. 3d 1038, 1040 (Fla. 4th DCA 2014).

The only issue on appeal is whether the trial court erred in failing to impose fifteen days in secure detention as part of the disposition of I.J.'s armed burglary of a conveyance charge, pursuant to section 790.22(9)(a). Section 790.22(9)(a) states:

> (9) Notwithstanding s. 985.245, if the minor *is found to have committed an offense that involves the use or possession of a firearm*, as defined in s. 790.001, other than a violation of subsection (3), or an offense during the commission of which the minor possessed a firearm, and the minor is not

2

committed to a residential commitment program of the Department of Juvenile Justice, in addition to any other punishment provided by law, the court shall order:

(a) For a first offense, that the minor *shall serve a minimum period of detention of 15 days in a secure detention facility*; and

> 1. Perform 100 hours of community service; and may
> 2. Be placed on community control or in a nonresidential commitment program.

§ 790.22(9)(a), Fla. Stat. (2017) (emphases added). The question raised in this case is whether the statute requires that the minor *actually* use or possess a firearm in order for the enhancement to apply. We agree with the Third District and hold that it does not.

The parties and the trial court relied on two cases, one from the Third District, and one from this Court. In the case from the Third District, *R.C.S.*, a juvenile entered a no contest plea to armed burglary with a firearm and theft of a firearm. *R.C.S.*, 837 So. 2d at 517. At the disposition hearing, the juvenile claimed that he was only the lookout during the incident, and therefore, the provisions of section 790.22(9)(a) did not apply to him. *Id.* The trial court agreed, and did not sentence the juvenile to the mandatory fifteen-day detention period. *Id.* at 517-18. On appeal, in a short opinion, the court stated:

> We are of the view that the legislature purposely intended the mandatory minimum detention provision of that section to act as an example of what might lie ahead should one persist in further criminal activity. We reject the juvenile's argument that we should analogize section 790.22(9), with section 775.087(1), Florida Statutes (1999). Moreover, we do not think there is any ambiguity present because the subsection at issue expressly provides for such penalty for the "use" of a firearm. Here, even though the juvenile acted only as a lookout, he was involved in a crime which involved the use of a weapon. This was sufficient to mandate the minimum fifteen day detention at issue. Accordingly, we reverse the order under review and remand for additional sentencing.

*Id.* at 518 (footnote omitted).

In the case from our Court, *B.O.*, an unarmed juvenile, took two handguns from a home, and was charged with two counts of grand theft

3

of a firearm. *B.O.*, 25 So. 3d at 587. He pled guilty to the two crimes, and on appeal, challenged the fifteen-day secure detention sentence he received pursuant to section 790.22(9)(a). *Id.* This Court cited to principles of due process, and phrased the analysis as:

> The statute does not specify that it applies when the subject of the theft is a firearm. Rather its express term is *use or possession* of a firearm in the commission of an offense. The question presented in this case is therefore whether the statute applies when the petition neither cited the statute nor alleged that, in committing the theft, the child used or possessed a firearm.

*Id.* at 587-88. Citing to several cases, this Court explained that "[s]tate law now recognizes a broadly applicable Constitutional rule about punishment: the accused must be given notice in the charging document of any fact on which a sentencing enhancement will be based." *Id.* at 589.

> [T]he charging document serves an important purpose beyond merely alleging the elements of the crime charged. These cases hold that the charging document must also support the sentence imposed after a finding of guilt. Hence it is irrelevant to the disposition issue that the petition in this case charged all the elements of grand theft. The present issue involves the penalty that may be properly inflicted for the crime actually charged in the petition: the standard penalty or an enhanced penalty depending on *facts in addition* to the crime's raw elements that were not alleged.

*Id.* (emphasis added). Therefore, our holding in *B.O.* was based on due process concerns, and not on the possession requirements of section 790.22(9)(a).

There are two reasons that the sentence in this case must be reversed: (1) the statute requires the fifteen-day mandatory secure detention sentence; and (2) the notice requirements that we found lacking in *B.O.* were satisfied in this case.

"In construing the meaning of a statute, we first look at its plain language." *Montgomery v. State,* 897 So. 2d 1282, 1285 (Fla. 2005). "When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." *Id.* (quoting *Holly v. Auld,* 450 So. 2d 217,

219 (Fla. 1984)). Section 790.22(9)(a) is unambiguous, and supports the State's interpretation. The statute states that the enhancement is required when a "minor is found to have committed an offense that involves the use or possession of a firearm[.]" § 790.22(9)(a), Fla. Stat. The statute does not require *actual* use or *actual* possession, and to the contrary, only requires conviction of an offense that *involves* the use or possession of a firearm. Therefore, the statute does not focus on the specific actions of the defendant, but instead, the category of the offense.

The determinative offense here is armed burglary. As the State argues, armed burglary of a conveyance certainly involves the *use or possession* of a firearm. *See Gaber v. State*, 684 So. 2d 189, 191 (Fla. 1996) ("Burglary becomes armed burglary if, in the course of committing the offense, the offender '[i]s armed, or arms himself within such structure or conveyance, with explosives or a dangerous weapon.'" (alteration in original) (quoting § 810.02(2)(b), Fla. Stat. (1993))). The offense necessitates that the defendant is "armed" or "arms himself," meaning the defendant uses or possesses an explosive or dangerous weapon. *See Armed*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "armed" as "[e]quipped with a weapon" or "[i]nvolving the use of a weapon"). In the instant case, the State specifically alleged that I.J. and his co-defendant "in the course thereof HE/THEY were armed or armed HIMSELF/THEMSELVES within such conveyance with explosives or a dangerous weapon, to-wit: .40 CALIBER SMITH AND WESSON 6040 HANDGUN . . . ."

As the juvenile did in *R.C.S.*, I.J. here also attempts to analogize section 790.22(9)(a) with the 10-20-Life statute, and cites to cases interpreting that statute. However, I.J.'s citation to cases interpreting the 10-20-Life statute actually demonstrates the error of his argument. The two relevant subsections of section 775.087, Florida Statutes (2017), Florida's 10-20-Life statute, expressly state that actual use or possession is required before enhancement under that statute is mandated. *See* § 775.087(1), Fla. Stat. (2017) ("[D]uring the commission of such a felony the defendant *carries, displays, uses, threatens to use, or attempts to use* any weapon or firearm[.]" (emphasis added)); § 775.087(2)(a), Fla. Stat. (2017) (referencing when a "person *actually possessed* a 'firearm' or 'destructive device,'" "*possessed* a 'firearm' or 'destructive device,'" and "*discharged* a 'firearm' or 'destructive device' . . . and, as the result of the discharge, death or great bodily harm was inflicted upon any person[.]" (emphases added)). Although the legislature chose to make actual possession a requirement under the 10-20-Life statute, it did not do the same under section 790.22(9)(a).

5

Our interpretation of section 790.22(9)(a) is also consistent with the intent of juvenile disposition goals. In addressing an Equal Protection Clause challenge to a previous version of section 790.22(9)(a), the Third District explained that "the state's interests in juvenile offenders is vastly different from its interests in adult offenders." *T.M. v. State*, 689 So. 2d 443, 445 (Fla. 3d DCA 1997). "With adult offenders, the state's primary objective is that of retributive punishment. One of the primary purposes of the Juvenile Justice Act, however, is . . . 'that the most appropriate control, discipline, punishment and treatment can be administered' with 'the specific rehabilitation needs of the child[.]'" *Id.* (quoting § 39.001(1)(c), Fla. Stat. (1995)). The court also explained:

> The statute is obviously designed to get the immediate attention of all juveniles and to issue a "wake-up call" that the state deems their firearm offenses to be serious enough to warrant the automatic deprivation of their liberty for a period of time, even on a first offense. Its intent clearly is to have a deterrent effect to hopefully prevent the juvenile's escalation into the adult criminal justice system.

*Id.* at 446.

As for the notice requirements under *B.O.*, here, the State complied. The delinquency petition charged both I.J. and the co-defendant with burglary of a conveyance, stating: "HE/THEY were armed or armed HIMSELF/THEMSELVES" with a handgun.

In *Delgado v. State*, 43 So. 3d 132 (Fla. 3d DCA 2010), the defendant was charged with and convicted of two counts of armed robbery with a firearm, and sentenced to a minimum mandatory term pursuant to Florida's 10-20-Life statute. *Id.* at 133. On appeal, the defendant argued that the information charging him did not allege that he possessed a firearm during the robbery, and therefore, the information was not specific enough to support application of the minimum mandatory. *Id.*

Like the charging document in this case, the information in *Delgado* charged the defendant and co-defendant together under each count, stating that "said defendant possessed a firearm or destructive device" during the commission of the offense. *Id.* at 134. The court found this language enough to charge *both* defendants with the possession of the firearm or destructive device, because:

> The phrase, "said defendant," likewise applies to both defendants since, under Florida law, the singular form of a

6

> phrase includes the plural form. In this case, the phrase, "said defendant," includes the phrase, "said defendants." § 1.01, Fla. Stat. (2009) ("In construing the statutes in each and every word, phrase or paragraph, where the context will permit: (1) the singular includes the plural and vice versa.").

*Id.*

Here, the charging document was more specific than simply using the singular form for the two co-defendants. The petition stated that "HE/THEY" armed "HIMSELF/THEMSELVES," clearly using the singular *as well as* the plural forms. Since the singular form alone would have been sufficient, certainly the singular form *plus* the plural form was enough to put I.J. on notice. As the concurring opinion stated in *B.O.*: "If the State seeks to 'get the immediate attention of all juveniles and to issue a wake-up call' . . . all it must do is simply add the words 'and in so doing used or possessed a firearm' to its charging document." *B.O.*, 25 So. 3d at 590 (Ciklin, J., concurring specially). Similar language was used in the charging document here ("in the course thereof HE/THEY were armed or armed HIMSELF/THEMSELVES . . . with . . . a . . . weapon"), and therefore, the requirements of *B.O.* were satisfied.

We hold that the trial court erred in failing to impose the mandatory fifteen days in secure detention as part of I.J.'s disposition for armed burglary of a conveyance. We reverse for proceedings consistent with this opinion.

*Reversed and remanded with instructions.*

DAMOORGIAN and CIKLIN, JJ., concur.

*       *       *

**Not final until disposition of timely filed motion for rehearing.**

7