# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

JOSEPH CASTELLANO, M.D.,

Petitioner,

v.

DAVID HALPERN, M.D. and WEST FLORIDA-MHT, LLC d/b/a HCA
FLORIDA SOUTH TAMPA HOSPITAL,

Respondents.

Nos. 2D22-3154, 2D22-4155, and 2D22-4156
CONSOLIDATED

_____

December 29, 2023

Petition for Writ of Certiorari to the Circuit Court for Hillsborough
County; Melissa M. Polo and James M. Barton, II, Judges.

Stuart Jay Levine of Walters Levine & Degrave, Tampa, for Petitioner.

Martin B. Goldberg; Jennifer Christianson; Jonathan E. Siegelaub; and
Ashley P. Singrossi of Lash & Goldberg, LLP, Miami, for Respondent
David Halpern, M.D.

Walter J. Tache and Magda C. Rodriguez of Tache, Bronis and Descalzo,
P.A., Miami, Florida, for Respondent West Florida-MHT, LLC d/b/a HCA
Florida South Tampa Hospital.


KELLY, Judge.

In these consolidated petitions for writ of certiorari, petitioner Joseph Castellano, M.D., asks us to quash the order of the trial court sustaining respondent David Halpern, M.D.'s objections to discovery propounded by Castellano in his lawsuit against Halpern for intentional interference with a business relationship and defamation per se. He also asks us to quash the protective order entered in favor of respondent West Florida-MHT, LLC d/b/a HCA Florida South Tampa Hospital (HCA), a non-party below. Halpern and HCA argued, and the trial court agreed, that all discovery sought by Castellano was privileged and confidential under sections 395.0191(8), 395.0193(8), and 766.101(5),[1] Florida Statutes (2021), provisions which afford confidentiality in connection with applications for hospital staff membership and clinical privileges, hospital peer review and disciplinary proceedings, and hospital medical review committee proceedings respectively.[2] We conclude that the trial

_____

[1] We note that constitutional challenges to these statutes have been raised on the basis of article X, section 25, of the Florida Constitution ("[P]atients have a right to have access to any records made or received in the course of business by a health care facility or provider relating to any adverse medical incident."); *Edwards v. Thomas*, 229 So. 3d 277, 287 (Fla. 2017) (holding that article X, section 25 "eliminat[ed] *all* discovery restrictions on 'any records . . . relating to *any* adverse medical incident' ") (omission in original). However, the constitutional exception to the privilege is not at issue in this case. *See, e.g., Tarpon Springs Hosp. Found., Inc. v. White*, 286 So. 3d 879, 882-83 (Fla. 2d DCA 2019) (holding that the constitutional exception to the privilege protecting records of a hospital board from discovery in any civil action against a provider of professional health services did not apply because the action did not involve an "established adverse medical incident").

[2] These statutes also contain provisions providing immunity to participants in those processes for actions "arising out of or related to carrying out the provisions" of the various statutes. *See* § 395.0191(7); *see also* § 766.101(8). In *Halpern v. Castellano*, 339 So. 3d 343 (Fla. 2d DCA 2022), we denied Halpern's petition for certiorari asking us to quash the order of the trial court denying his motion to dismiss Castellano's

2

court's determination that the discovery Castellano seeks is protected departs from the plain language of the statutes under which Halpern and HCA claim privilege, and that precluding the requested discovery will destroy Castellano's ability to prove his claim at trial. Accordingly, we grant the petitions and quash the trial court's orders.

## I. Facts

Castellano is a board-certified general surgeon who performs cosmetic surgery. Halpern is a board-certified plastic surgeon. The two doctors are competitors. In the past, Castellano, who had general surgery privileges at HCA, unsuccessfully sought to obtain permission to perform certain cosmetic surgery procedures at the hospital. At that time, only board-certified plastic surgeons were permitted to perform those procedures. Faced with this reality, Castellano approached a member of HCA's Medical Executive Committee (MEC) and proposed that HCA add a new clinical practice area in cosmetic surgery to its existing practice areas so that general surgeons could apply for clinical privileges to perform procedures currently limited to plastic surgeons. The MEC thought the idea was worth exploring and, per the hospital's bylaws, referred the matter to the Credentialing Committee for study. As part of its investigation into whether HCA should add a cosmetic surgery practice, the Credentialing Committee interviewed Halpern to get his views on the subject. He strongly opposed the proposal. Nevertheless, the Committee ultimately suggested to the MEC that it recommend the idea to HCA's Board of Trustees.

When Halpern learned that the MEC voted in favor of adding the new practice area and that it was going to recommend it to the Board, he

---

complaint based on his claim that he was entitled to immunity under these statutes.

3

sent a letter to HCA's chief of staff, who was also a member of the MEC, with copies to the hospital's chief executive officer, its chief medical officer, and the chair of HCA's Board stating his objection. It is this letter that is at the heart of Castellano's complaint against Halpern for defamation and intentional interference with a business relationship.

The letter in its entirety states:

It has come to my attention that certain cosmetic surgery privileges are being put forth to the Board of Governors meeting without my knowledge or input from you. Not for a lack of my availability or interest in this issue which you are keenly aware of. As you represent the entire staff of Memorial Hospital at this meeting I find this very disturbing and frankly a backhanded move on the part of the MEC. I formally request to be allowed to present my concerns (as well as every other Board Certified Plastic Surgeon on Staff and possibly every Board Certified Physician on Staff) to the Board in person since you have willfully excluded me from this process. Please reply in writing your response to this request or call me before the meeting. If you deny me this privilege, I will petition the Board itself but feel it is best to stay within the framework of the medical staff to do so.

I am rather dismayed that you and the MEC would continue to consider this issue as I thought it was resolved and had its due process. Obviously not. I think that the Medical executive committee does not realize the seriousness of this proposal and the ramifications for the staff, the community[,] and the hospital itself. I am sure that the Board of Governors **WILL** want to hear both sides of the story and finally resolve this issue which ALL privileging is based upon. It is not about petty competitiveness but of patient safety in our community and within the hospital itself. IF you cannot see this or fully comprehend this then I am sorry for you and all the other misguided members of the MEC. I **must** protect the patients in our community and our beloved hospital which you will put at great risk, with little or no reward, with this irresponsible and unnecessary request.

The Board ultimately voted against the proposal to add a practice area in cosmetic surgery. Castellano's lawsuit followed.

The amended complaint's basic allegations are that Halpern knew it was Castellano who had advocated for the cosmetic surgery proposal, and that he knew Castellano intended to apply for cosmetic surgery privileges should HCA approve the idea. The amended complaint alleges Halpern's letter contains false statements of fact about the ability of cosmetic surgeons to safely practice cosmetic surgery, and that Halpern intentionally and willfully made the false and defamatory statements for malicious and anti-competitive purposes and that as a result Castellano was damaged. All the discovery requests at issue here seek information related to the contents of the letter.

## II. Analysis

"[C]ertiorari is appropriate when a discovery order departs from the essential requirements of law, causing material injury to a petitioner throughout the remainder of the proceedings below and effectively leaving no adequate remedy on appeal." *Allstate Ins. Co. v. Langston*, 655 So. 2d 91, 94 (Fla. 1995). In *Giacalone v. Helen Ellis Memorial Hospital Foundation, Inc.*, 8 So. 3d 1232, 1234 (Fla. 2d DCA 2009), this court explained that "[c]ertiorari is rarely available to review orders denying discovery because in most cases the harm can be corrected on appeal."

> However, when the requested discovery is relevant or is reasonably calculated to lead to the discovery of admissible evidence and the order denying that discovery effectively eviscerates a party's claim, defense, or counterclaim, relief by writ of certiorari is appropriate. The harm in such cases is not remediable on appeal because there is no practical way to determine after judgment how the requested discovery would have affected the outcome of the proceedings.

5

*Id.* at 1234-35.

Because it goes to our jurisdiction, our first task is to examine whether the trial court's discovery orders cause "material injury" that cannot be remedied on appeal. *See Gonzalez v.* State, 15 So. 3d 37, 39 (Fla. 2d DCA 2009) (explaining that "material and irreparable harm" is a jurisdictional requirement for certiorari relief). Halpern concedes that the discovery orders eviscerate Castellano's case.[3] He contends, however, that this circumstance is not what results in irreparable harm. Rather, Halpern argues the harm results from the uncertainty regarding how the prohibition on discovery affected the outcome of the case. Here, he contends there is no uncertainty—the trial court's determination that the requested discovery is privileged will "entirely dispose of the action" for two related reasons. First, it will make it impossible for Castellano to make the evidentiary showing to prove his claims and second, it amounts to a finding that Halpern is immune from suit under the immunity provisions in the statutes and consequently, the court will eventually have to enter judgment in his favor. Thus, Halpern argues, Castellano cannot demonstrate irreparable harm because he "will be free to challenge the immunity rulings in an appeal from the judgment."

We believe this argument overlooks the fact that if Castellano is precluded from conducting the requested discovery not only can he not prove his claims, on direct appeal he "would have the nearly impossible task of proving that the trial court committed reversible, harmful error"; he could not even make a proffer of what the evidence would have shown had discovery been allowed. *Anderson v. Duggan,* 56 So. 3d 830, 832-33 (Fla. 2d DCA 2011) (finding irreparable harm where a party was

---

[3] HCA's response is silent on this matter.

6

precluded from obtaining documents needed to prove his claim thus preventing him from meeting his burden of proof and further making it "nearly impossible" to establish on appeal that the trial court erred). Accordingly, we conclude that under these circumstances, Castellano has established irreparable harm for the purposes of certiorari review.

Next, we must determine whether Castellano has shown that the trial court departed from clearly established law.

> "[C]learly established law" can derive from a variety of legal sources, including recent controlling case law, rules of court, statutes, and constitutional law. Thus, in addition to case law dealing with the same issue of law, an interpretation or application of a statute, a procedural rule, or a constitutional provision may be the basis for granting certiorari review.

*Allstate Ins. Co. v. Kaklamanos*, 843 So. 2d 885, 890 (Fla. 2003). A departure from clearly established law can be shown by the misapplication of the plain language in a statute. *Gonzalez*, 15 So. 3d at 39. Accordingly, we must review the statutory provisions upon which Halpern and HCA base their claims of privilege to determine if the trial court's finding of privilege is supported by the plain language of those statutes.

The statutes at issue regulate hospital procedures governing the granting of staff membership and clinical privileges, physician discipline, and quality evaluation and improvement. *See Holly v. Auld*, 450 So. 2d 217, 220 (Fla. 1984) (stating that the legislature "deemed it wise to encourage a degree of self-regulation by the medical profession through peer review and evaluation"), *abrogated on other grounds by Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022). Section 395.0191, titled "Staff membership and clinical privileges," directs the manner in which a

licensed facility, such as a hospital, is to consider applications for staff membership or clinical privileges.  Section 395.0191(8) prohibits the discovery of "investigations, proceedings, and records" of a hospital board "in any civil action against a provider of professional health services arising out of matters which are the subject of evaluation and review by such board."  Similarly, sections 395.0193(8) and 766.101(5) contain the same prohibition for the "investigations, proceedings, and records" of a hospital's peer review panel or medical review committee.  Section 395.0193 pertains to the "process of investigating and disciplining physicians pursuant to the state-mandated peer review process." § 395.0193(1).  Section 766.101 provides for the establishment of a committee

> to evaluate and improve the quality of health care rendered by providers of health service, to determine that health services rendered were professionally indicated or were performed in compliance with the applicable standard of care, or that the cost of health care rendered was considered reasonable by the providers of professional health services in the area.

§ 766.101(1)(a)1, *l.*

It is undisputed that Castellano's lawsuit for defamation and intentional interference with a business relationship does not arise from the hospital's peer review or medical review processes, nor does it arise from the hospital's consideration of an application by Castellano for staff membership or clinical privileges.  Perhaps recognizing the limited scope of the grant of privilege contained in these statutes, the respondents urge us to broadly interpret them arguing that we are obligated to honor the obvious legislative intent and policy behind the statutes even where that

8

intent requires an interpretation that exceeds the literal language of the statutes.[4] Our obligation is the opposite.

As the supreme court explained in *Ham v. Portfolio Recovery Associates, LLC*, 308 So. 3d 942, 946-47 (Fla. 2020),

> [i]n interpreting the statute, we follow the "supremacy-of-text principle"—namely, the principle that "[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012). We also adhere to Justice Joseph Story's view that "every word employed in [a legal text] is to be expounded in its plain, obvious, and common sense, unless the context furnishes some ground to control, qualify, or enlarge it." *Advisory Op. to Governor re Implementation of Amendment 4, the Voting Restoration Amendment*, 288 So. 3d 1070, 1078 (Fla. 2020) (quoting Joseph Story, *Commentaries on the Constitution of the United States* 157-58 (1833), *quoted in* Scalia & Garner, *Reading Law* at 69).

(Alteration in original). "[W]e are precluded from construing an unambiguous statute in a way which would **extend, modify or limit,** its express terms or its reasonable and obvious implications." *Lawnwood Med. Ctr., Inc. v. Sadow*, 43 So. 3d 710, 721 (Fla. 4th DCA 2010) (quoting *Donato v. Am. Tel. & Tel. Co.,* 767 So. 2d 1146, 1150-51 (Fla. 2000).

Respondents characterize these statutes as providing "extraordinarily broad discovery immunity" provisions that protect from discovery any disciplinary, credentialing, or quality review materials. They make no real argument that what occurred here arose from the hospital's peer review or medical review committees. Instead, the

---

[4] We reject respondents' contention that permitting the discovery sought by Castellano in this case runs counter to the legislature's goal of encouraging "self-regulation by the medical profession through peer review and evaluation." *See Holly*, 450 So. 2d at 220.

9

respondents focus on what they characterize as the credentialing process.

Reduced to its essence, the respondents' argument is that even though the allegations in the petition do not arise from an application by Castellano for staff or clinical privileges, the privilege extends to the process by which the hospital sets the standards and procedures for acting on an application for privileges. They contend that if the cosmetic surgery proposal had been adopted, the hospital would then have had to set standards for considering and acting upon applications for staff membership or clinical privileges in that area; and therefore, the privilege should extend to Castellano's discovery requests in this case.

We cannot accept this expansive reading of the statute. The plain language of section 395.0191(8) expressly limits the privilege to "any civil action against a provider of professional health services arising out of matters which are the subject of evaluation and review by such board," and the matters subject to evaluation and review by the board in the context of section 395.0191 are applications for staff membership or clinical privileges. The same analysis applies to sections 395.0193 (peer review) and 766.101 (medical review). Because the trial court extended the statutory privilege beyond what is provided for in the plain language of the statute, we conclude it departed from the essential requirements of law. We therefore grant Castellano's petitions for writ of certiorari and quash the trial court's discovery orders.

Petitions granted; orders quashed.


NORTHCUTT and LaROSE, JJ., Concur.

_____

10

Opinion subject to revision prior to official publication.